## Augustus H. West v. Annie Laraway and another.

*Married women: Personal liability: Separate property: Statute construed: Contracts: Surety for husband.* Under our statute (*Comp. L., p. 1478*) whatever contracts a married woman may lawfully make, may be made "with the like effect as if she were unmarried;" but she has no general capacity to contract, and can only make such contracts as relate to her own property; she cannot become personally liable except on account of her own matters; and cannot enter into an undertaking jointly with her husband merely as his surety; and she can never be held without affirmative proof that the contract is her own, and within her powers.

*Married women: Statute construed: Separate property: Intent: Consideration.* To sustain a contract made by a married woman, it must appear to have been made with the intent to bind her sole property as well as upon a consideration that would sustain it for that purpose.

*Agreement: Consideration: Wife's promise.* Whether or not an agreement to abstain from prosecuting an estate is such an agreement on behalf of the separate property of one married woman out of several heirs as would support her promise to pay the whole:—*Quære?*

*Evidence: Agreement to abstain from prosecuting: Wife's separate estate.* But where the only showing of any agreement to abstain from prosecuting the estate, is not of an agreement made with such married woman herself or with any one on her behalf, but consisted simply of assurances to her husband that unless she signed a joint note with him for his debt, proceedings would be taken against the estate of her father, which was claimed to be held as surety for the debt, it fails to make out any agreement on behalf of her separate property.

*Promissory notes: Liability of married women.* The proposition "that any married woman who joins in a promissory note with her husband for the absolute payment of money does by that act in all cases create a charge upon such separate property as she may own, and that the charge thus created may be enforced by a legal action and collected by execution upon the judgment as it could formerly be enforced by decree in equity," considered and held to be unsound.

*Equitable doctrine of charges on wife's separate property: Action at law under the statute.* The old doctrine of enforcing in equity the contracts of a married woman as charges upon her equitable interests in property held to her separate use, considered and held to rest upon her disability to bind herself *in personam,* or to transfer or charge a legal estate by her sole act or agreement, and not to be applicable to cases at law arising under our statutes which have removed the very disabilities on which the doctrine was originally founded; and any attempt to engraft the old rules of equity upon the new system can only lead to confusion and mischief.

*Submitted on briefs October 28.    Decided January 13.*

Error to Bay Circuit.

*Marston & Hatch,* for plaintiff in error.

*Holmes & Stoddard,* for defendant in error, Annie Laraway.

CAMPBELL, J.

Plaintiff sued Annie Laraway and her husband Henry Laraway jointly upon their joint promissory note, which had been given for a debt of the husband, on an extension of time. He allowed judgment to pass against him in the court below, but she defended and her defense was sustained. The points raised against her are : *first*, that she was personally benefited by the transaction ; and, *secondly*, that she bound her separate estate by her express promise to pay, under the circumstances, so that the note became a charge upon it.

Under our present system, whatever contracts a married woman may lawfully make, may be made " with the like effect as if she were unmarried."—*2 Comp. L., p. 1478.* But she has now no general capacity to contract. She can only make such contracts as relate to her own property, while in regard to that she has very full powers. She may purchase property and bind herself for the purchase money.—*Tillman v. Shackleton, 15 Mich., 447 ; Campbell v. White, 22 Mich. R., 178 ; Rankin v. West, 25 Mich., 195.* But she cannot become personally liable except on account of her own matters; and cannot enter into an undertaking jointly with her husband merely as his surety.—*De Vries v. Conklin, 22 Mich., 255.* And she can never be held without affirmative proof that the contract is her own and within her powers.—*Powers v. Russell, 26 Mich., 179; Emery v. Lord, 26 Mich., 431.*

The first question presented is whether this is a contract concerning her own property. It is not so in form, and can only be made so by connecting it with some consideration which would show it to be so in fact. It is claimed that, so far as she is concerned, it was in fact given for the benefit of her estate, to save it from being directly charged in another proceeding threatened against it. There was evidence which was regarded in the court below as tending to show that the estate of her father was

28 MICH.—59.

responsible for the debt of Henry Laraway, out of which the note originated, by reason of a contract of suretyship made by the father in his life-time to West, and that West informed Henry Laraway that he should proceed against the estate unless Mrs. Laraway would sign a joint note with him. There is no evidence that Mrs. Laraway herself entered into any contract with West whereby the latter agreed with her not to prosecute the estate; but there is evidence that she knew her father was her husband's surety.

As under this division of the case the contract, in order to bind her, must be a contract on behalf of her sole property, it should appear to have been made with that intent, as well as upon a consideration that would sustain it for that purpose.

The agreement to abstain from prosecuting a debt against particular persons or property is, beyond doubt, a valuable consideration. Whether such an agreement as is relied upon here to abstain from prosecuting an estate is such an agreement on behalf of the separate property of one married woman out of several heirs as would support her promise to pay the whole, is a question which is worthy of consideration, but which does not really arise in this case.

There is not any evidence whatever which tends to show that Mrs. Laraway had any idea that she was supposed to be, or that she was in fact, making any bargain on her own behalf. The only evidence showing her understanding of the matter, shows it was to help her husband and save his wages, not to keep her own estate or her share in her father's estate from being prosecuted. While it is not desirable to throw any technicalities in the way of contracts really meant to refer to a wife's separate interests, it is neither just nor in harmony with the principles of law to assume that a contract must be made to refer to one subject, simply because it could have been made for that end, when in fact it was made for another and very different purpose. As we have always held, the burden of proof is

on the plaintiff to show for what purpose she contracted, and to prove it clearly.

The case stands upon no different footing, in the absence of such proof, than if West had never possessed or asserted any right or claim against any estate in which she was interested. She cannot be held to a knowledge of the facts which induced her husband to procure her signature for an extension of his own debt, upon which she could not in any event be any more than a surety. There was no contract made with her whatever as an inducement to her agreement, and if West had undertaken to prosecute his claim against the estate, whatever other defense she might have interposed against that proceeding, there is no agreement between herself and West that appears in this case which would make a specific defense as an agreement.

The argument was therefore chiefly rested on the other proposition, which is the only one of substantial importance in the case. That proposition rests on the claim that any married woman who joins in a promissory note with her husband for the absolute payment of money, does by that act in all cases create a charge upon such separate property as she may own; and that the charge thus created may be enforced by a legal action, and collected by execution upon the judgment, as it could formerly be enforced by decree in equity.

By the common law the disability of married women to make agreements personally binding was the same as in equity.

No court could enforce contracts so as to render personal judgment. But where property was held to the separate use of a married woman, the whole separate interest, being entirely of equitable creation, was held subject to such rules of control as equity chose to establish. But property not held to her separate use was subject to the rules of law, and could only be charged or disposed of in a legal manner. The law has never allowed a married woman to make a charge upon or disposal of her legal

interests by any less formalities than such as other persons are required to use; and generally the rules have been much more strict than those applicable to other persons.

When equity permitted married women to deal with their separate estates, and yet did not allow them to make contracts binding *in personam*, it enforced their acts as directions to their trustees, or as sales or charges upon their equitable interests; and, inasmuch as the interests which they could thus control were always chattel interests, and not freeholds or estates in land, there was no great anomaly in recognizing almost any distinct act which would otherwise be meaningless, to operate as a charge on such interests. And it seems to have become a settled doctrine in England, and has been held in some of our states, that a note or undertaking for money of any kind, signed by a wife jointly with her husband, although binding no one but the husband as a contract, is a charge by way of security, on her separate estate for the debt.

The doctrine of *Hulme v. Tenant, 1 Bro. C. C., 16,* to this effect, though often criticised, has usually been followed in England; and the cases have not even required her undertakings to be in writing where the interests were of such a nature as to be bound without. But it was said in that case, and such seems to be the settled doctrine, that no interest in lands beyond the rents and profits could ever be reached in that way. See cases collected in notes to *Hulme v. Tenant, 1 Lead. Cas. in Eq., 324, et seq.* It seems further to be understood that the charge can only be established from some act clearly indicating an intent to make the debt so operate, and is not enforced as in an implied assumpsit; and where, instead of merely incurring a debt, and so implying a charge to secure it, a wife sold an annuity and failed to transfer it in proper form, it was held her estate was not liable for the consideration money, because she had undertaken to do a specific act which was invalid, and she could not be made liable on the bargain.—*Duke of Bolton v. Williams, 2 Ves. Jr., 138.* While the doctrines are

peculiar, and the decisions very much confused, they all agree that there can be no enforcement of any of her contracts *in personam,* and that nothing can be reached except the equitable interest, and that no remedy is applicable except a bill in equity to reach the parties holding the property to her use.—See *Hovenden's Sup. to Ves., Jr., Vol. 2, p. 66—note to Sperling v. Rochfort, 8 Ves., 164.*

The whole doctrine (which has been somewhat narrowed and qualified in many American cases,—see *American notes to Hulme v. Tenant, ubi sup.*) depends on the double assumption that she can make no contract of any kind which will bind her *in personam,* and that she cannot transfer or charge a legal estate by her sole act or agreement. And the act or agreement of a married woman who at the time had no separate equitable estate, was not of the least validity, so as to reach any subsequently acquired interests, or to bind her at law, should she become a widow.

It was expressly held by this court in *De Vries v. Conklin, 22 Mich. R., 255,* that a married woman could not be held liable on a joint note given for her husband's debt, on which she was only a surety. And that decision practically decides this case. The same suggestions were made there which were made here, that she could bind her equitable estate by such a signature; and the court, without deciding what might have been the case in equity, if such an estate had existed and been contemplated by the contract, held that a wife's property held by legal title was not the same thing as an equitable separate estate, and that an action at law gave a different remedy. Indeed it is plain that if a woman can bind her property by every note which she signs, and if her note can be sued at law, there is no limit to her right of binding herself by contract.

A court of common law enforces its judgments by execution; and when judgment has been rendered against a married woman, it is collected like any other. The execu-

tion will seize any property which she possesses, and will dispose of it absolutely, and not merely bind the *usufruct.*

The whole purpose of our present system was to remove the wife's disabilities in regard to property, and put her as to that upon the same footing as if she were unmarried. She contracts on that footing when she contracts at all, and she disposes of her property on the same basis. There is no occasion to extend and give a broader application to rules of equity which could never have had sense or reason except because of the very disabilities which are now removed. In all of her contracts and dispositions of property, and in all suits arising out of them, she is to be treated as a *feme sole.*—*Comp. L. of 1871*, §§ *4803, 4805, 4806.* And the dealings of an unmarried woman are in the same legal position as those of a man.

No one has ever imagined that a man, by signing a note or a bond, created a lien on his property legal or equitable. Even a judgment creates no lien. Unless the property is expressly pledged or mortgaged, it remains free until levied upon by attachment or execution. And a common-law action is of no avail to enforce a lien of any kind. It leads to nothing but a personal judgment, which can only be satisfied out of such property as is legally subject to seizure, without reference to the date of its acquisition. A contract made when a man has no property will authorize a judgment under which after-acquired property can be taken; and a contract made when a person has personalty or realty will not prevent its alienation.

We think that any attempt by courts to engraft the old rules of equity upon the new system can only lead to confusion and mischief. A married woman would have greater powers and greater liabilities than a single woman, if any such medley should be allowed. There is no obstacle to her binding any of her property expressly. And therefore there is no need of implications, which extend to no other persons, although situated alike.

Those who deal with her on her personal responsibility

must be prepared to show that she has acted within her. legal powers. Those who desire to obtain security on her property must obtain it as they would if she were unmarried,—that is, by some instrument describing. the property and defining their rights in it, or by some pledge or transfer which is equivalent.

As in this action the wife is sued upon contract, and it can only be maintained upon her personal agreement, the whole question, so far as this branch of the inquiry is concerned, is, as already stated, disposed of by the decision in *De Vries v. Conklin.*

The judgment should be affirmed, with costs.

COOLEY, J., and GRAVES, CH. J., concurred.

CHRISTIANCY, J., did not sit in this case.