SALAME LACAS v. THE DETROIT CITY RAILWAY COMPANY.

*Street railways—Injury to passenger alighting—Contributory negligence—Damages—Married women—Evidence—Appeal.*

1. Where in a negligence case to recover for injuries received by being thrown from a horse-car, while attempting to alight, by the sudden starting of the car, the testimony tends to show that the plaintiff had reached a point where it would be

difficult to turn back before the bell was rung as a signal for starting (she being about to put her foot upon the step, which was a board running along the side of the car), and that the car started at that very instant, the plaintiff cannot be held guilty of negligence in continuing her descent from the car.

2. Testimony of statements of present sufferings, made by the plaintiff in a negligence case, is competent; citing *Johnson v. McKee,* 27 Mich. 471; *Elliott v. Van Buren,* 33 Id. 49.

3. Where in a negligence case brought by a married woman it appears that sole credit was given to her for the expenses incident to her sickness, she can recover the amount as a part of her damages, whether actually paid when the suit was commenced or not.

4. Under Supreme Court Rule No. 59, only such points will be passed upon as are made in the brief of counsel, even though additional errors may be assigned; citing *Black v. Dawson,* 82 Mich. 485.

5. A physician may testify whether a cause which it is alleged existed would, in his opinion as a medical man, be sufficient to produce a condition which is claimed to have resulted from this cause; citing *Fay v. Swan,* 44 Mich. 544.

Error to Wayne. (Reilly, J.) Argued June 14, 1892. Decided July 1, 1892.

Negligence case. Defendant brings error. Affirmed. The facts are stated in the opinion.

*Sidney T. Miller (John C. Donnelly,* of counsel), for appellant, contended:

1. This case does not come within the rule formulated in *Werbowlsky v. Railway Co.,* 86 Mich. 236, 239, or in *Britton v. Railway Co.,* 90 Id. 159, namely, that, "when a street-car is stopped for the purpose of allowing a passenger to get on or off, the stoppage must be for a sufficient interval to allow the passenger to get on or off in safety," or, in other words, that the purpose for which the car is stopped must be fulfilled. The evidence shows that this was done in this case, the car having stopped for the purpose of allowing passengers to get on.

2. It was error to allow a witness who was a mere visitor, and who dropped in from time to time for 11 months after the accident, to make general statements as to the plaintiff's story of her injuries, when it was not shown whether such

story was narrated at the *post* or *ante litem motam* visits (the court record shows the suit was begun in November, 1890), or what the attendant circumstances were. While exclamations of pain are admissible (1 Greenl. Ev. § 102; *Elliott v. Van Buren*, 33 Mich. 49; *Reed v. Railroad Co.*, 44 N. Y. 574), and in some cases statements of present pain are admitted (*Railroad Co. v. Huntley*, 38 Mich. 543), the law does not permit a person who has been injured to call in her neighbors at various times for a period of 11 months after the injury, and retail her sufferings to them; citing *Dundas v. Lansing*, 75 Mich. 499; *Merkle v. Bennington Tp.*, 58 Id. 162; *Jones v. Village of Portland*, 88 Id. 598.

*William Stacey*, for plaintiff, contended for the doctrine of the opinion.

MONTGOMERY, J. This suit is brought to recover for injuries received by the plaintiff while attempting to alight from one of the defendant's horse-cars. The defendant asked that the jury be instructed that the plaintiff had not made a case by her testimony, and the refusal to give this instruction is the principal ground relied on for reversal.

The plaintiff testified that on the 11th of August, 1890, she left Dr. Brodie's house, where she had been at work during the day, and stopped and purchased some groceries, which she carried in a basket; that she got aboard the car in question, and the moment she put her basket down she noticed that there was a strange conductor on the car; that she told him that she wanted to get off, as she was on the wrong car; that he laughed at her, and she turned back, and took her basket on her arm, and took hold of the post at the side of the car to get down easy; that she took hold of the post because she did not want to fall,—took care of herself not to fall; that as she was going to put her foot on the step the bell was rung, and she fell and broke her arm. The car was an open one, and the step was a board running along its side.

On cross-examination she testified that she stood beside the post, and took hold of it with her right hand, holding the basket in her left hand, expecting to hold onto the post until she got down, when she thought she would let go; so the effect of getting down with her right hand holding the post would be to have her face turned towards the rear of the car. The conductor started the car before she got her foot on the ground. He rang the bell before she got her foot on the board,—before she started to get down.

"*Q.* Don't you know, Mrs. Lacas, that the car does not start instantly after the bell is rung?

"*A.* Yes, sir; they do.

"*Q.* Right instantly?

"*A.* The minute you ring they start right off.

"*Q.* Don't it take some little time,—isn't there time enough for a person standing on the steps of a car when the bell rings, for that person to get down before it gets in motion?

"*A.* But I was not on the step yet. * * *

"*Q.* Your testimony seems to be that the instant the bell rang you were thrown down?

"*A.* No; the time the bell rang I started to put my foot on the board; he started it himself.

"*Q.* Where were you when the bell rang?

"*A.* I was taking my basket, and getting ready to get down.

"*Q.* You were in the car when the bell rang?

"*A.* Yes, sir; of course I was.

"*Q.* When he started up?

"*A.* Yes, sir; I was taking hold of the post, and was getting ready to get down, and the minute I put my foot on the board the car started.

"*Q.* But the bell rang before?

"*A.* Yes, sir; of course it would not go without they rang the bell."

And on redirect examination she was asked:

"*Q.* Will you explain to the jury just your position?

"*A.* I came into the car; this is the place; I came in here; this is Monroe avenue; and I put my basket down here. I said to the conductor, 'I am in the wrong car.'

I turned this way, and took my basket, and was just putting my foot down. I had my foot on the platform, I had my foot just going to put it on the board. I didn't touch the board before he started.

"*Q.* Your foot was just coming down to that board?

"*A.* Yes, sir.

"*Q.* What happened when your foot was in that position?

"*A.* He started the car, and it threw me off.

"*Q.* Where were you when the bell rang?

"*A.* I was right on the edge of the car to get off. * * *

"*Q.* How long a time elapsed between the time the bell rang and you fell?

"*A.* It was a pretty short time. I turned back to take my basket, and tried to get down. At the time he saw me touch the post to get down he rang the bell."

1. We think the testimony was sufficient to justify the circuit judge in submitting the case to the jury. The testimony tended to show that the plaintiff had reached a point where it would be difficult to turn back before the bell was rung, and the car started at the very instant she was acting. Under these circumstances, it cannot be held that the plaintiff was guilty of negligence in continuing her descent from the car. *Railroad Co. v. Crunk,* 119 Ind. 542 (21 N. E. Rep. 31); *Railroad Co. v. Coulbourn,* 69 Md. 360 (16 Atl. Rep. 208); *Wyatt v. Railway Co.,* 55 Mo. 485; *Strand v. Railway Co.,* 64 Mich. 216.

2. The testimony of statements of present sufferings made by the plaintiff to the witness Verdon were competent. The court took due care to exclude relations of past sufferings, and kept within the rule. *Johnson v. McKee,* 27 Mich. 471; *Elliott v. Van Buren,* 33 Id. 49.

3. The plaintiff is a married woman, and was permitted to recover the expenses of her sickness incurred by and charged to her, but not paid at the time of the trial. It appeared that credit had been extended to her solely. Under these circumstances, she became liable to pay for the services. *Meads v. Martin,* 84 Mich. 306; *Hirshfield*

*v. Waldron*, 83 Id. 116. The expenses having been incurred on her own account, it is, of course, immaterial that the bill had not been actually paid when suit was instituted.

4. The defendant in oral argument also insisted that the court erred in permitting a recovery by plaintiff for the loss resulting from her inability to earn money, on the ground that her husband was entitled to her services, and was the proper party to maintain the action. We cannot, however, consider this question upon this record. The defendant does not make the point in its brief. The only point made in the brief relating to the subject of damages is stated as follows:

" The question is whether necessary expenses incurred by and charged to a wife, but not paid by her, are proper elements of damage here."

This point we have considered above, and we cannot, under Rule 59 of this Court, pass upon points not made in the brief of counsel, even though additional errors may be assigned. *Black v. Dawson*, 82 Mich. 485.

5. The only additional question raised in the brief of counsel relates to an alleged error in permitting a physician to answer the following question:

"*Q.* Would a violent fall from a street-car cause that displacement of the womb which you discovered?
"*A.* I think it would, perhaps; when a lady jumps out of a wagon, alighting heavily on a pavement, a solid woman, it will displace the womb."

The witness had previously testified that the plaintiff was suffering from a displacement of the womb. The testimony given in answer to the above-quoted question was proper, as showing the character of the cause which might have produced the injury. The question did not, as was the case in *Jones v. Village of Portland*, 88 Mich.

92 MICH.—27.

598, call for the opinion of the witness on the whole case. The extent to which the ruling went was to permit a doctor to state whether a cause which it was alleged existed would, in his opinion as a medical man, be sufficient to produce a condition which it was claimed resulted from this cause. The question is ruled by *Fay v. Swan*, 44 Mich. 544.

The judgment will be affirmed, with costs.

The other Justices concurred.