FIRST COMMERCIAL BANK OF PONTIAC v. NEWTON.

1. MARRIED WOMEN — PROMISSORY NOTE — CONSIDERATION — EVIDENCE.

> In an action by a bank against a married woman upon notes executed by her husband in her name, plaintiff claimed that the husband was defendant's agent in all business transactions, and was authorized to sign the notes in suit. The defendant denied that she was engaged in business, by agent or otherwise, and disavowed her husband's agency. It was shown that an account had been opened with plaintiff in defendant's name, many years before, by her husband; that he at that time discontinued his own account, and thereafter made deposits and drew checks upon the new account; and, under objection, testimony was received showing that defendant participated in several dealings of her husband out of which the bank account arose, that the notes in suit were for overdrafts upon that account, and that the farm on which she lived with her husband had been transferred to her by him before the account was opened. *Held*, that the evidence was properly received.

2. SAME—SEPARATE ESTATE—BANK ACCOUNT—NOTE FOR OVERDRAFT.

> Evidence that a husband deeded his farm to his wife, and from that time the business was carried on by the wife, and the bank account growing out of the business was kept in her name, tends to show that notes given for overdrafts in her account relate to her separate property.

3. SAME—HUSBAND AS AGENT.

> A married woman may constitute her husband her agent to carry on business for her in her name.

4. SAME—WHEN LIABLE FOR FAMILY SUPPLIES.

> A married woman residing with her husband may be held liable upon her note for the price of clothing purchased for a minor son, if the sale was made to her upon her individual credit.

5. SAME—CONDITION PRECEDENT TO SUIT—STATUTES.

> 2 How. Stat. § 6298, provides that a married woman shall be liable to be sued upon any contract or engagement made by

117 MICH.—28.

her in cases where her husband is not in law liable, or where he refuses to perform such contract or engagement. Section 7352 saves to the holder of any bill or note the right to bring separate actions against the parties in the manner authorized by law. *Held*, that it is not incumbent upon the holder of a promissory note given by a married woman for her individual debt, and signed by her husband also, apparently as accommodation indorser, to show, as a condition precedent to his maintaining a suit against the wife, that the husband is not liable or has refused to pay.

Error to Oakland; Smith, J. Submitted June 7, 1898. Decided June 28, 1898.

*Assumpsit* by the First Commercial Bank of Pontiac against Ann Newton on promissory notes. From a judgment for plaintiff, defendant brings error. Affirmed.

*Henry M. Cheever* and *William E. Walsh*, for appellant.

*Aug. C. Baldwin*, for appellee.

LONG, J. The declaration was upon the common counts in *assumpsit*, with copies of three notes attached. The first note is for $25, dated September 4, 1895, due four months after date, and payable to J. W. Bird or order, signed "Ann Newton," and indorsed "J. W. Bird." The second is for $100, dated December 4, 1895, due 15 days after date, payable to the plaintiff, and signed "Ann Newton" and "William Newton." The third is for $1,983.64, dated November 10, 1895, due 60 days after date, payable to the plaintiff, and signed "Ann Newton" and "William Newton." Defendant pleaded the general issue, and gave notice that she was a married woman at the time the notes sued upon were signed, and that she never executed them herself, or authorized any one else to execute them for her, and that, if they were signed by William Newton, her husband, no consideration ever passed to her or her estate for the signing of said notes.

It appears that William Newton, the husband of defend-

ant, had a deposit account with the plaintiff, beginning in 1869 and continuing to September, 1877.   June 26, 1878, an account was opened with the plaintiff in the name of Mrs. William Newton.   No account thereafter was kept at the bank with William Newton.   Soon after the account was opened with Mrs. William Newton it was changed to Ann Newton, and was thenceforth so continued. It appears from plaintiff's testimony that, for many years prior to 1878, William Newton was engaged in importing, buying, and selling sheep and cattle.   In 1876 he conveyed his farm and stock to his wife, and thereafter continued to live with her upon the farm.   The buying, importing, and selling sheep and cattle was continued, and the account was kept in the bank in the name of Ann Newton.   Deposit of moneys was made from time to time, and a large number of checks were drawn on the account and money paid thereon.   Notes were frequently given for overdrafts, and when these notes were due they were frequently renewed, and all overdrafts included in the new notes.   All this business was done in the name of Ann Newton, her husband, William Newton, assuming to act as her agent. This continued from July, 1878, to January, 1896, without question.   The accounts were frequently overdrawn, when cards were sent to the defendant personally, and she came to the bank, and inquired relative to them, and, having been informed as to the matter, often replied that her husband was absent, and when he returned "he would attend to the matter, as he looked after her business."   It appears that the arrangement between the defendant and the bank was originally made with John D. Norton, who was then president of the bank, but who died in March, 1895.

Mr. Jacobs was called as a witness for plaintiff, and testified that he had been in the employ of the bank as cashier and teller for over five years, and that on two occasions the defendant had come to the bank with a postal card sent out by the bank to her, which read: "Please call at the First Commercial Bank;" that she

handed this card to him at the window, and said: "I suppose this refers to my notes. Mr. Newton is away, and he attends to all my business for me, and as soon as he comes I will see to it." This was in 1892. Mr. John D. Norton was living at that time. The account was still continued in this way until the present notes were given. The $25 note had been purchased by the bank from Mr. Bird. January 17, 1896, all these notes had become due; and witness Jacobs testifies that he took them to Detroit to meet the defendant, and asked her to secure them by mortgage; that defendant said she would not sign the mortgage until she had seen her husband, as he always attended to her business affairs, and she thought he would be home the next day, and that she would then give the mortgage after she had seen her husband; that on the next day defendant's husband and Jacobs again went to Detroit and saw defendant; that she would not then sign the mortgage, claiming she was sick, but said she would sign it as soon as she got home. This mortgage was never signed. Evidence was also given by the plaintiff showing, or tending to show, that the defendant's husband had acted as her agent since 1878, in all her matters of buying and selling sheep and cattle and in the dealings at the bank.

The defendant testified that she never had any business transactions with the bank; that she was not engaged in business from 1878 to 1895; that her husband was not her agent; that he had no authority to sign her name; and that she was in no way indebted to the plaintiff. She also denied the conversations with Mr. Jacobs at the bank in 1892. As to the $25 note, the defendant claimed it was given on account of clothing sold to her minor son. Mr. Bird, to whom the note was given, testified that the defendant had an open account at his store in which goods were charged to her; that he made statements of the account to her, and had talked with her about it, and had delivered goods to her; that this note was given for her personal account,—that is, the account was due from her

personally; that it was given for an account for clothing for the minor son, and charged to her account, and which she directed to be so charged.

Two special questions were submitted to the jury at the request of counsel for defendant:

"1. Did Mrs. Newton personally ever open an account in her own name with the plaintiff bank?

"2. Was Mrs. Newton in partnership with her husband in any business at the time the notes in question were given, or during the time which intervened between that time and the giving of the notes to extend or consolidate which the notes Exhibits B and C—the notes sued upon—were given?"

Both these questions were answered in the negative by the jury.

The court, at the request of plaintiff's counsel, submitted to the jury the following question:

"Do you find that William Newton, by authority of Ann Newton, opened an account with the plaintiff's bank in her name?"

The jury answered this question in the affirmative.

The jury returned a verdict for the plaintiff for the amount of its claim as represented by the three notes, to wit, $2,380.69.

The court charged substantially that the defendant, being a married woman, could not become liable on the promissory notes, whether signed by herself alone or jointly with her husband, unless such notes were given in reference to her separate property, either already owned by her or to be acquired by the avails of the notes.

The plaintiff's claim on the trial was that the defendant's husband signed her name to the two larger notes; that he was her agent in all her business transactions, and was authorized to sign checks and notes in the conduct of such business. Mr. Norton, the president of the bank, having died before the trial, no direct evidence could be given on that subject by the plaintiff. The defendant failed to call her husband as a witness, so that the entire case was

made up by the evidence heretofore referred to and the circumstances surrounding the various transactions, extending over many years.

Plaintiff was permitted to show that the title to the farm had been transferred to the defendant by her husband; that the two larger notes were made up of overdrafts in the defendant's account. The court was not in error in permitting this proof.

Other evidence was given by plaintiff showing several contracts in reference to the purchase of sheep and cattle by defendant's husband, in which the defendant took part in making arrangements for the transfer of the property. Objection was made to this on the ground that it had no relation to the notes in controversy. It was competent for the purpose of showing that William Newton was in fact the agent of defendant in her dealings in sheep and cattle, out of which deals the bank account was made up.

It is contended that there was no evidence given by plaintiff showing, or tending to show, that the notes in suit related to the defendant's sole property. We cannot agree with counsel in this contention. The farm was deeded to defendant by her husband, and the proofs tended to show that from that time forward the business was carried on by the wife, and the bank account and notes grew out of these transactions, and had relation to her separate property. It is settled in this State that our statutes do not authorize a married woman to become personally liable on an executory promise except concerning her separate estate. But it is also well settled that a married woman may carry on business in her own name, and for that purpose may make herself personally liable for a purchase of property on credit, and her husband may act as her agent. *Rankin* v. *West*, 25 Mich. 200. This case has since been followed, but it is unnecessary to cite the cases.

It appeared that the $25 note was given to Mr. Bird in settlement of a personal account of the defendant, a portion of it being for clothing purchased by her for a minor son. In *Campbell* v. *White*, 22 Mich. 178, the question

was whether a married woman living with her husband, who had bought articles of family use for the members of her husband's family, as well as for herself, could be held personally liable therefor.   It was said:

"The liability of the wife was consequent upon her obtainment of the goods on her sole credit and individual promise to pay for them, and was therefore contemporaneous with such obtainment, and not conditional upon the kind of use to which the goods should be subsequently put. Her right to acquire upon her own credit was complete when the articles were obtained."

Some claim is made that the defendant's case was prejudiced before the jury by some remarks of the court during the progress of the trial.   We do not think it important to discuss that question, as, from an examination of the record, we can see no prejudice to defendant; and the same may be said of the remarks of counsel for plaintiff during the argument of the case.

But one other question need be discussed.   Counsel for defendant asked the court to charge the jury that—

" The notes sued upon [Exhibits B and C] are joint and several notes, upon which William Newton is liable upon simple proof of his signature.   This proof has been given and is uncontradicted.   His liability rests upon the fact of his signature, and that the consideration is presumed to have passed to him.   Hence Mrs. Newton cannot be held upon either of these notes, because the statute limits her liability to be sued upon any contract or engagement made by her to cases where her husband is not in law liable."

This was refused, and counsel now contend that, inasmuch as no suit had been brought against the husband, and no showing made that he had refused to pay, therefore, under section 6298, 2 How. Stat., no action could be maintained against the wife.   This section provides:

"The husband of any married woman shall not be liable to be sued upon any contract made by such married woman in relation to her sole property, and the wife shall be liable to be sued upon any contract or engagement made by her in cases where her husband is not in law

liable, or where he refuses to perform such contract or engagement."

The jury found that the defendant and her husband were not partners, and the proofs show that the husband was the agent of his wife in making the notes. It is true that he signed them with her, and apparently as an accommodation indorser, though the notes in form are joint and several. The debt was her debt, and upon which she was personally liable. The husband stood as to her like any other accommodation indorser, and it was not necessary to bring suit against him before suit could be brought against the wife, or to join him in the action. 2 How. Stat. § 7352. The contention of counsel cannot be sustained.

We think a fair trial has been had, and we find no error in the case calling for a reversal of the judgment. The judgment is affirmed.

The other Justices concurred.