*In re* DE SPELDER'S ESTATE.

BOLTHOUSE *v.* DE SPELDER.

1. WITNESSES — HUSBAND AND WIFE — MATTERS EQUALLY WITHIN KNOWLEDGE OF DECEASED—ASSIGNMENT.

The husband of claimant, who filed a claim against an estate for services performed, was not such a party in interest because he had assented to his wife's performing the work and receiving the proceeds, as to be barred from testifying to the terms of the agreement between decedent and his wife under 3 Comp. Laws, § 10212 (5 How. Stat. [2d Ed.] § 12856), excluding the testimony of an assignor of the claim as to matters equally within the knowledge of the deceased.

2. CONTRACTS—MARRIED WOMEN—VALIDITY—HUSBAND AND WIFE.

A married woman is not disabled from making a contract for domestic services and labor to be performed in the household of herself and husband and to be paid for out of her estate after death, notwithstanding she had no separate property at the date when she made the agreement.

3. EVIDENCE—ESTATES OF DECEDENTS—WILLS—CONTRACTS.

Upon the trial of a claim against the estate of decedent for services rendered in the lifetime of deceased and to be paid for out of her estate by will, the admission of the will of her husband showing that it conveyed property to her, creating a separate estate, was not erroneous and the inventory of the estate of the decedent and her will were also admissible in evidence.

4. SAME—VALUE—WORK AND LABOR.

Testimony of an acquaintance of decedent, who was intimate with the family and knew about the household affairs, was competent, and the witness was qualified to state her opinion relative to the value of services performed by the claimant, its weight being for the jury.

5. SAME—HEARSAY—SELF-SERVING DECLARATIONS.

Declarations in the interest of decedent who made them are incompetent, if they were not made in the presence of the opposite party: the test seems to be whether she might have testified upon the subject if she was living.

Error to Ottawa; Cross, J. Submitted April 28, 1914. (Docket No. 157.) Decided June 1, 1914.

Jeannette Bolthouse presented her claim against the estate of Jannetje De Spelder, deceased, and appealed to the circuit court from an order disallowing the claim. Judgment for claimant and Elizabeth De Spelder, executrix of said estate, brings error. Affirmed.

*Farr & Kolyn* (*George A. Farr, Jr.,* of counsel), for appellant.

*Peter J. Danhof* and *Corie C. Coburn,* for appellee.

STONE, J. The claimant filed a claim in the probate court of Ottawa county which was as follows:

"Estate of Jannetje De Spelder, Deceased,
"To Jeannette Bolthouse, Dr.
"For washing, care and nursing of the deceased Jannetje De Spelder and her husband, Jacobus De Spelder at request of Jannetje De Spelder, from May 1, 1903, to day of death of Jannetje De Spelder, June 17, 1912, at $4.00 per week, nine years, $1,862.00."

The claim was disallowed by the probate court, and an appeal taken to the circuit court for the county of Ottawa. The case was there tried before a jury and resulted in a verdict for the claimant in the sum of $1,600, and costs of suit.

The parents of claimant had been much in the employ of Mrs. De Spelder and family before the birth of claimant. During the first 15 years of claimant's life, she was much of the time in the De Spelder family, and she remained with that family, more or less of the time, until she finished the eighth grade in the public schools. It seems to be undisputed that from the time the claimant was 15 years of age until she was married she remained with Mrs. De Spelder in service, which was consented to by the father of

claimant, who testified, without objection, upon the trial, that he gave his consent to her remaining there and to her having her own wages. At the age of about 19 years, the claimant was married, on February 8, 1906, and, with her husband, immediately moved to Grand Rapids, where they stayed until about August 1st. Mrs. De Spelder, apparently, was very much attached to the claimant and desired her to return and live with and assist her in her household affairs, her family consisting of herself and husband, Jacobus De Spelder, then well advanced in years. They lived in the home belonging to Jacobus, but the evidence is very convincing that Mrs. De Spelder had principal charge of the affairs of the family. Money was sent by Mrs. De Spelder to enable claimant and her husband to return from Grand Rapids and enter the home and service of Mrs. De Spelder. After they had been in the De Spelder home a few days, the following arrangement was made between the claimant and Mrs. De Spelder, as testified to by Floris Bolthouse, claimant's husband, under objection and exception, which will be referred to later.

"*Q.* Do you recollect any conversation between your wife and Mrs. De Spelder with reference to her working there after you moved back here?

"*A.* Yes, we were here something like a week or two weeks; it was in the evening.

"*Q.* What was the conversation that you heard?

"*A.* They were in the kitchen, and I was in the dining room. I heard them talking about it. Now she says, 'Jennie, you are back here, and I am glad you are back.' She says. 'Now if you stay with me I will make it good with you in my will.' Now, she says: 'Don't worry, Mrs. De Spelder, I will never leave you under no condition.' She says, 'If my husband does want me to go away, I won't go, because I will promise you I will stick to it.'

"*Q.* Did you consent to her arranging there and working under that arrangement?

"*A.* Not that minute, but when we got into our

own room she talked to me and asked me what I thought about it, and I says: 'It is up to you. You can do what you want to. What you get out of it is yours.' She remained there about two years. Then we went to Ferrysburg. During the time we lived in Ferrysburg, my wife returned to Grand Haven to work for Mrs. De Spelder about three times a week. I was working there. That was during the winter. I don't remember just the date we left for Ferrysburg. It was somewhere during the first part of December when the snow started to fly. We returned some-where around February. When we left it was our intention to return in the spring. We left some of our furniture there. * * * We moved back in the spring and remained up to her death. My wife did general housework, nursing, companionship in the evening there. She was called to attend her at night. I don't know just how often, quite often, but I don't know how many times. During that time Mrs. De Spelder ran the house. She did all the business. The old man was weak. His mind was kind of wander-ing. Sometimes he got lost."

On cross-examination the following occurred:

"*Q.* You say that you had some talk with your wife and Mrs. De Spelder about— what about, after you came from Grand Rapids?
"*A.* I did not talk with the both of them.
"*Q.* You heard a conversation between the two?
"*A.* Yes.
"*Q.* Then you had a talk with your wife after that?
"*A.* Yes.
"*Q.* Where was this talk?
"*A.* In our kitchen. No one was present when my wife and I had this talk. We were alone. I told her whatever arrangement she made with her was all right, after she told me what she talked about, I said, 'I heard it,' and, 'It is all right.' I says: 'Every-thing you get out of it is yours. I won't stop you.' I did not have any further talk with Mrs. De Spelder about this. Mrs. De Spelder knew I would allow my wife to stay there then. I told her I would let my wife stay. I don't remember when, but I told her we would both stay. She did not ask to have me stay. I was not in the deal at all. I was paying rent."

The foregoing testimony was objected to by appellant's counsel on the ground that it was a matter equally within the knowledge of the deceased, and that the witness was an opposite party under the statute. After some discussion, the testimony was allowed to stand, and appellant's counsel excepted to the ruling and subsequently moved to strike out all this testimony, which motion was refused and the ruling duly excepted to. It further appeared upon the trial that Jacobus De Spelder died testate on the 3d day of May, 1910. Upon the trial of the case, the last will and testament of Jacobus De Spelder and the inventory of his estate, as well as the last will and testament of Jannetje De Spelder and the inventory of her estate, were admitted in evidence over the objection and exception of the appellant that the same were irrelevant and immaterial.

A witness, Katie Pals, was permitted to testify upon the subject of the value of the services of the claimant during the nine years that it was claimed she was in the employ of Mrs. De Spelder. This woman was a neighbor 'who, during this period of time, was frequently in the De Spelder home, her visits varying from a number of times a week to less frequent occasions, during which time she had divers conversations with Mrs. De Spelder and observed the claimant in her work and duties there in the care of the household. It is the contention of appellant that she did not show herself sufficiently acquainted with the services performed by the claimant to be able to testify upon the subject.

Error was also assigned upon the ruling of the court in excluding some testimony offered by the executrix of the estate relative to her conversations with Mrs. De Spelder, after her husband's death, with reference to claimant. These conversations were objected to by claimant's counsel as incompetent and improper. The proposed testimony seems to have

been excluded upon the ground that the same was self-serving and statements of the deceased that she would not be permitted to testify to were she alive. They were in the absence of the claimant, and exception was taken to the ruling of the court. The remaining assignments of error relate to the charge of the court, and will be referred to later. Appellant has brought the case here upon writ of error.

By appropriate assignments of error, counsel for appellant have discussed the questions involved under the following heads:

(1) Errors relating to the admission in evidence of testimony by the husband of claimant as to the conversation he overheard between claimant and decedent with reference to services; he at the time not having assigned to claimant the right to recover for her own services.

(2) Errors relating to the admission in evidence of testimony of services rendered by claimant at the De Spelder home prior to the death of Jacobus De Spelder, husband of decedent.

(3) Errors connected with the admission in evidence of the inventory of decedent's estate and of the will and inventory of her husband's estate.

(4) Error in admitting improper evidence of the witness Katie Pals of the value of claimant's services.

(5) Error in rejecting testimony of the executrix as to conversations with decedent as to the relations between decedent and claimant, and with reference to decedent's physical condition.

(6) Error in the incomplete and ambiguous charge of the court with reference to what the alleged contract claimed by claimant was.

1. It is urged by appellant's counsel that at the time claimant's husband heard the alleged conversation with decedent, to which he testified, no assignment to his wife of her right to her services and earnings had been made, and that he was the real party in interest and the opposite party under the statute; also, that if claimant's husband was not then

the real party in interest, he was an assignor under the statute, and by reason of that fact was precluded from testifying to those matters equally within the knowledge of the deceased; and counsel call attention to the statute, § 10212, 3 Comp. Laws (5 How. Stat. [2d Ed.] § 12856). Counsel cite and rely upon the case of *Stackable* v. *Estate of Stackable,* 65 Mich. 515 (32 N. W. 808), and later decisions to the same effect.

We have examined these cases, as well as some of the later ones, particularly *In re Van Dyke's Estate,* 171 Mich. 195 (137 N. W. 79) ; but, in our opinion, these cases are not controlling here, for the reason that the evidence in the instant case does not bring it within the rule contended for. As to the services rendered by the claimant prior to her marriage, claimant's husband would have no interest therein. It will be noted in the testimony that almost immediately upon the arrival of claimant and her husband from Grand Rapids, and before any definite arrangement had been made, the contract testified to by the husband was entered into between claimant and decedent, and that upon the same evening he consented to the arrangement and told his wife that she might have the fruits of her labor in that regard. We think that the case is governed by the doctrine of this court in *Slack* v. *Norton,* 111 Mich. 213 (69 N. W. 497). It was there held that a married woman is entitled to the benefits of a contract by which she furnished board and care to another, where all the supplies were provided by her and the arrangement was entered into and carried out with the consent of the husband; that in a proceeding by the wife to enforce such a claim against the estate of a decedent the husband is competent to testify to the arrangement made with the deceased, since he does not stand to the wife as assignor of the claim, and is therefore not within the statute prohibiting the assignor from

testifying to matters which, if true, were equally within the knowledge of the deceased. In the last-cited case, LONG, C. J., speaking for the court, said:

"In the present case, the wife was permitted by her husband to keep boarders, furnished the provisions herself, and with which it is apparent the husband had nothing to do. In this respect it differed from the *Stackable Case,* and the husband was a competent witness to show that this was the wife's business, and not his own. It is not an action upon an account brought by the wife which has been assigned to her. It is a claim with which the husband had nothing to do, if his testimony given in the case is to believed. The husband did not stand towards the wife as the assignor of the claim, and therefore was not prohibited by the statute from testifying to any arrangement which the wife made with the deceased for his board and care.  *  *  *  It has been decided many times in this court that a married woman, with the consent of her husband, may carry on business on her own account, and may be protected in the results thereof, against him and against his creditors, to the same extent as if she were unmarried"—citing *Tillman* v. *Shackleton,* 15 Mich. 447 (93 Am. Dec. 198) · *West* v. *Laraway,* 28 Mich. 464.

We see no difference in principle between the instant case and the one from which we have above quoted. The whole arrangement from the time the parties left Grand Rapids to the time of the death of Mrs. De Spelder seems to have been with the assent and consent of the husband. We think the court did not commit any error in receiving this evidence, or in the manner in which it was dealt with.

2. This subject relates to the question whether Mrs. De Spelder, being a married woman, was competent to make the contract with claimant. It is the claim of appellant, as we understand it, that Mrs. De Spelder, being a married woman living in the home of her husband, was incapable of entering into said contract by reason of her marriage. There is no ques-

tion under the testimony that the contract was made with Mrs. De Spelder, who at that time was really in charge of the home and ran the affairs of the house. Jacobus De Spelder was then an aged man and seems to have had nothing to do with the control of the household affairs. He, under the evidence, was not present when the contract was made, and there is no inference from the testimony that he ever made any agreement to pay for the services. On the contrary, the agreement expressly negatives such an understanding or inference, for the express and definite promise was made by Mrs. De Spelder to claimant that she would pay her in her will. This idea that claimant would be compensated in the will of decedent was expressed in many different ways, but all to the same effect. Under this proof, claimant could not maintain an action against Mr. De Spelder in his lifetime, or against his estate after his death, because claimant's contract was to stay and work for deceased so long as she should live, and it would not be due and payable until after the death of Mrs. De Spelder. If Mrs. De Spelder's estate was worthless, then the claimant would be without compensation, and it could not be said that the claimant could look to the estate of the husband of deceased. Upon this proposition, appellant's counsel rely largely upon the case of *Kirt* v. *Kropp*, 110 Mich. 51 (67 N. W. 1080), which they quote at large in their brief. We do not think the case controlling here, principally for the reason that the contract was made solely and alone with Mrs. De Spelder, while in the last above cited case it distinctly appears as follows:

"Plaintiff testified that she had conversations with both defendant and her husband as to her employment, and that both promised to pay her. She did work upon the farm as well as in the house."

It might be well said that in the *Kropp Case*, the

181 Mich.—11.

agreement being with the husband and wife, the wife could not be bound by the agreement. She certainly could not be bound as the surety of her husband in such an agreement. In our opinion the line of cases which should control in this case begins with the early case, already cited, of *Tillman* v. *Shackleton, supra,* that a married woman, living with her husband, is competent to make herself personally liable on contracts where she expressly pledges her sole credit, and the other party in reliance upon such promise parts with property or services, and that the husband is in no respect bound by her contract when the credit is not given to him. *Campbell* v. *White,* 22 Mich. 178; *Hirshfield* v. *Waldron,* 83 Mich. 116 (47 N. W. 239); *Meads* v. *Martin,* 84 Mich. 306 (47 N. W. 583).

The last above cited case was an action of assumpsit brought by the plaintiff, who was a physician, druggist, and grocer, to recover for medical services, drugs, medicines, and groceries furnished to the defendant, a married woman living with her husband. It was held that the case was ruled by *Hirshfield* v. *Waldron, supra,* and that the plaintiff was entitled to recover. In that case it was claimed by the plaintiff that he gave credit entirely to the wife because the husband was irresponsible.

In *Goodman* v. *Shipley,* 105 Mich. 439 (63 N. W. 412), the defendant, a married woman, was held liable under the rule of *Hirshfield* v. *Waldron, supra,* and *Meads* v. *Martin, supra,* for medical services rendered by plaintiff for her and for her minor daughter, by a former marriage, who was living with her, at her request, and charged to her, and for which she agreed to pay. The case is an instructive one and distinguishes the case of *Howe* v. *North,* 69 Mich. 272 (37 N. W. 213), in which last-named case the plaintiff expressly testified that the husband and wife made the contract with her, and it was said that, if the de-

fendant made the contract claimed with her husband, she simply became responsible as a surety, and it was held that the facts of that case warranted that statement.

In a number of cases where medical expenses resulting from an injury of a married woman incurred by and charged to her have been in suit, she has been permitted to recover for them upon the ground that she was liable to pay the debt contracted by her. *Lacas* v. *Railway Co.*, 92 Mich. 412 (52 N. W. 745); *Lammiman* v. *Railway Co.*, 112 Mich. 602 (71 N. W. 153); *First Commercial Bank* v. *Newton*, 117 Mich. 433 (75 N. W. 934); *Foster, Charles & Ewen Co.* v. *Felcher*, 119 Mich. 353 (78 N. W. 120); *Boyle* v. *City of Saginaw*, 124 Mich. 348-353 (82 N. W. 1057); *Gilson* v. *City of Cadillac*, 134 Mich. 189 (95 N. W. 1084).

In *Lempke* v. *Felcher*, 115 Mich. 37 (73 N. W. 17), defendant, a married woman, was held liable upon her express promise to pay for the work and services of plaintiff upon her husband's property, and the court charged the jury that if the defendant represented that she was the owner of the property she would be estopped from setting up the fact that it was not her property.

It is somewhat difficult to understand the position of appellant's counsel as to the separate estate of Mrs. De Spelder, because they say in their brief the question is nowhere in issue as to whether deceased had a separate estate from and after 1901, and that this point is not questioned by defendant, and yet their argument proceeds upon the theory that she, being a married woman, living with her husband, had no separate estate to be charged. It is very evident that she believed and supposed she had a separate estate, for all the evidence tends to show that she agreed to provide for the payment of claimant in and by her will. The will of her husband, which is in evidence,

bears date in 1901. Whether she knew its contents or not does not appear. How much of her estate was derived from his will, or from him, does not appear in this record. It is very clear to us that, if she obtained the services of claimant upon the representation claimed, it would make no difference whether she was then seised of a separate estate or not, for her agreement was to pay after her death by a provision in her will, evidently in expectation that she would then have an estate; and the doctrine of estoppel might well apply, as it was applied in the case last above cited. It has been held in this court that a married woman can make herself personally liable for the services of an attorney in a divorce case. *Wolcott* v. *Patterson,* 100 Mich. 227 (58 N. W. 1006, 24 L. R. A. 629, 43 Am. St. Rep. 456) ; *McCurdy* v. *Dillon,* 135 Mich. 678 (98 N. W. 746). It has also been held that a married woman upon her own promise to pay is liable for the services of a nurse. *Barber* v. *Eberle's Estate,* 131 Mich. 317 (91 N. W. 123).

In our opinion the validity of the wife's contract does not depend upon the thing bargained for, becoming a wife's separate estate as soon as delivered to her, but whether or not she did agree individually, or personally, to become liable, and the other party looked to her exclusively for payment, whether the thing bargained for was property or services. The real question is: "Did the services benefit her or some member of her family?" We think the court did not err in its treatment of this question.

3. We find no error in the admissibility of the inventories and wills referred to. It is evident that the purpose for which the inventory of decedent was introduced was to show that she had a separate estate in her lifetime. This cannot be said to be immaterial, although in our judgment it was not controlling. Her will was material for the purpose of showing that she had made no provision for claimant therein. The

will of Jacobus De Spelder was material as tending to show that it gave to Mrs. De Spelder property and that she had a separate estate; and it also shows that claimant was not recompensed in and by such will. We are not able to see how the introduction of these instruments in any way prejudiced the appellant.

4. An examination of the testimony of Katie Pals satisfies us that her acquaintance with the family and household of Mrs. De Spelder was sufficient to qualify her as a housewife to testify to the value of the services. True, she did not live in the family as did the witness in *Lathrop* v. *Sinclair,* 110 Mich. 329 (68 N. W. 248) ; but her visits to the house and her intimacy with Mrs. De Spelder were such that it was competent for her to testify upon the subject. The weight of that testimony, of course, was for the jury. We find no error in the ruling of the court upon this subject.

5. We are unable to find any error in the ruling of the court excluding that part of the testimony of the executrix as to conversations had with deceased. This court has spoken a number of times upon the subject of declarations of decedent not in the presence of claimant tending to disprove a claim against the estate as self-serving statements. We might cite *Coleman* v. *McGowan's Estate,* 149 Mich. 624 (113 N. W. 17) ; *Bettinghouse* v. *Bettinghouse,* 156 Mich. 169 (120 N. W. 617) ; *Freda* v. *Tishbein,* 174 Mich. 391 (140 N. W. 502). Declarations in favor of interest are inadmissible. Perhaps the best test is to ask whether the deceased would have been permitted to testify upon the subject were she alive. She certainly would not be as to any self-serving statements. *Drake Coal Co.* v. *Croze,* 165 Mich. 120 (130 N. W. 355).

6. We have examined the charge of the court with some care, and do not think it is subject to the criti-

cism made of it by appellant's counsel in their argument. It seems to have been a fair submission to the jury of the questions involved, and we find no error therein.

An examination of the entire record shows that no prejudicial error appears therein, and the judgment of the circuit court is affirmed.

MCALVAY, C. J., and BROOKE, KUHN, OSTRANDER, BIRD, MOORE. and STEERE, JJ., concurred.