HARTLE v. KEEFER'S ESTATE.

1. HUSBAND AND WIFE—CLAIM FOR ROOM AND BOARD FURNISHED BOARDER IN HUSBAND'S HOME BELONGS TO HIM.

Where home in which husband and wife lived together belonged to him, was furnished by him, and he furnished board, claim for room and board of boarder, if any, belonged to husband, unless assigned by him.

2. WITNESSES—ESTATES OF DECEDENTS—MATTERS EQUALLY WITHIN KNOWLEDGE OF DECEASED.

In wife's claim against estate of her deceased step-father for room and board, she and her husband are incompetent to testify as to matters equally within knowledge of deceased which are relied on to establish claim; as to said claim husband being "assignor" (3 Comp. Laws 1929, § 14219).

3. PARENT AND CHILD—GRATUITOUS SERVICES—PRESUMPTIONS—ESTATES OF DECEDENTS.

Furnishing room and board by step-daughter to step-father is presumed to be gratuitous, in absence of evidence of contract to pay therefor, where she had lived with him as his daughter, and after her marriage he lived with her and her husband in home provided by husband.

4. APPEAL AND ERROR—PARENT AND CHILD—CLAIM FOR ROOM AND BOARD.

Findings of trial court in passing on disputed questions of fact and denying step-daughter's claim against estate of deceased step-father for room and board are affirmed, on appeal.

Appeal from Ionia; Hawley (Royal A.), J. Submitted August 3, 1932. (Docket No. 93, Calendar No. 36,479.) Decided October 3, 1932.

Rena Hartle presented a claim in the probate court against the estate of Adelbert Keefer, deceased, for room and board. Claim disallowed. Plaintiff appealed to circuit court. Judgment for defendant. Plaintiff appeals. Affirmed.

*Hayden, Hubbard & Rathbun (Dwight L. Wilson,* of counsel), for plaintiff.

*Watt & Colwell,* for defendant.

POTTER, J. Plaintiff presented in the probate court of Ionia county a claim against the estate of Adelbert Keefer, deceased, in the sum of $5,720 for room and board from June 1, 1913, to January 1,

1925, with certain exceptions in time for which no charge was made. The claim was disallowed by commissioners on claims appointed by the probate court, and an appeal taken to the circuit court where the case was tried without a jury. Judgment for defendant. Plaintiff appeals.

Deceased, in his lifetime, was the husband of plaintiff's mother, plaintiff being a step-daughter of deceased. During the lifetime of plaintiff's mother, plaintiff lived in the home of Adelbert Keefer, where she received her board, clothing, and schooling, being treated by him as his own child. Plaintiff's mother died in 1912, and in 1913 plaintiff married her first husband, Bernard Hartle, whereupon Adelbert Keefer roomed and boarded with them much if not all of the time covered by the claim of plaintiff. Plaintiff claims the court erred in excluding the testimony of Rena Hartle, the plaintiff, and that of her former husband, Bernard Hartle, as to matters equally within the knowledge of the deceased.

3 Comp. Laws 1929, § 13057, provides:

"The real and personal estate of every female, acquired before marriage, and all property, real and personal, to which she may afterwards become entitled by gift, grant, inheritance, devise or in any other manner, shall be and remain the estate and property of such female."

In *Tillman* v. *Shackleton,* 15 Mich. 447 (93 Am. Dec. 198), a majority of the court, against the dissent of Chief Justice Martin, held a married woman with her husband's consent might run a rooming and boarding house and become liable for furniture purchased therefor. And in *West* v. *Laraway,* 28 Mich. 464, 470, it was said:

"The whole purpose of our present system was to remove the wife's disabilities in regard to prop-

erty, and put her as to that upon the same footing as if she were unmarried. She contracts on that footing when she contracts at all and she disposes of her property on the same basis.''

In 1911 the rule applicable to property of a married woman was extended to cover her personal services. 3 Comp. Laws 1929, § 13061, provides:

''Each and every married woman in the State of Michigan shall be absolutely entitled to have, hold, own, retain and enjoy any and all earnings acquired by any such married woman as the result of her personal efforts.''

During the time the claim here involved, if any, accrued, plaintiff was a married woman living with her husband in a home belonging to him, furnished by him, and if boarded in the home, deceased partook of board furnished by plaintiff's husband. The court has long recognized a distinction between claims accruing to the wife where she was engaged in her own business involving her own property, and claims arising from personal services rendered by a wife which under the statute belonged to her; and claims for room and board like that here involved.

In *Slack* v. *Norton,* 111 Mich. 213, the wife ran a boarding house. Her husband was a traveling salesman. She was the head of the household, engaged in business in her own behalf. Her husband had nothing to do with furnishing the house, board, or provisions, or doing the work in connection therewith. The court, following *Tillman* v. *Shackleton,* supra, and *West* v. *Laraway,* supra, held:

''The husband did not stand towards the wife as an assignor of the claim and therefore was not prohibited by the statute from testifying to any arrangement which the wife made with the deceased for his board and care.''

In *Ashley* v. *Smith's Estate,* 152 Mich. 197, the claim presented by the wife was for personal services rendered by her. The question there involved was the right of the wife to make a contract for personal services with the consent of her husband. The claim in no way involved the recovery by plaintiff for property or rights originally belonging to the husband. It is said:

"It was maintained by defendant that, being a married woman, she could have no such claim, for the reason that her husband was entitled to her services, and she could not make a contract on her behalf without his consent. He was called to prove such consent and testified to his consent to his wife that she might make arrangement with her father and mother for caring for them."

This case, like *Slack* v. *Norton,* did not involve the question of board, but solely the question of personal services. It did not involve the recovery by plaintiff for property originally belonging to her husband. It did not involve the question of the transfer of a right in property from the husband to the wife. It involved only the right of the wife to recover for her own personal services rendered with her husband's consent.

*In re De Spelder's Estate,* 181 Mich. 153, involved a claim for washing, care, and nursing. It was a claim for personal services rendered by the wife. It was presented by the wife for services which belonged to the wife and which she could sue and recover for. She did not stand in the position of an assignee. Her husband did not stand in the position of an assignor. It is said (p. 159):

"He consented to the arrangement and told his wife she might have the fruits of her labor in that regard."

The court quoted with approval and emphasized the distinction pointed out in *Slack* v. *Norton,* between that case and the case of *Stackable* v. *Stackable's Estate,* 65 Mich. 515.

In *Wisniewski* v. *Wisniewski's Estate,* 254 Mich. 663, the decisive question here did not arise. That case involved personal services of the wife, which by existing statute and judicial decisions are her property—not originally the property of the husband of which the wife was assignee. It is said:

"Defendant also invokes the rule that household or home-rendered services of the wife belong to the husband, and *the claim here made is for services* rendered in home, and therefore, in law, the claim is that of the husband."

It was held the husband was competent to testify. No cases are cited. The statute (3 Comp. Laws 1929, § 14219) is mentioned. The holding was in accordance with the rule established by this court and recognized by 3 Comp. Laws 1929, § 13061. *Slack* v. *Norton, supra; Ashley* v. *Smith's Estate, supra; In re De Spelder's Estate, supra; In re Day's Estate,* 197 Mich. 604, but the claim here involved is expressly stated to be one for board, as to which plaintiff's husband was not a competent witness. *Stackable* v. *Stackable's Estate, supra; Finn* v. *Sowders' Estate,* 139 Mich. 623; *In re Day's Estate, supra.*

*Stackable* v. *Stackable's Estate, supra,* involved the question whether a husband could testify in support of his wife's claim against the estate of a deceased person for board. It is there said:

"In regard to the board, it was shown that William was the head of the house, but he claims he gave the board to his wife, and that it was always understood that she should receive the pay for it. His testimony as to the time the deceased boarded

at his house, and the amount to be paid for the same, was objected to, as coming within the statute as amended in 1885 (Act No. 139, Pub. Acts 1885). The court held that he could not be considered as 'assignor' under this statute.

"The object of the amendment evidently was to prevent the common practice of a claimant against an estate assigning his claim to another, and thereby becoming eligible as a witness, and defeating the spirit and intent of the statute as it stood before such amendment. See How. Stat. § 7545.

"It is clear that, without some assignment, this claim for board would belong to the husband, and not to the wife. He was the head of the household and furnished the family supplies. There had to be some agreement on his part with his wife that she should receive the pay for the board. The statute is aimed at an assignment before the death of the party against whom the claim exists, as well as to one after his death.

"We do not think he was a competent witness in relation to the items for board."

In *Finn* v. *Sowders' Estate, supra,* Christie Finn, a granddaughter of deceased, presented a claim against his estate for board, cleaning, nursing, and care. The husband, as in this case, furnished the house and supplied the table. His testimony was received by the trial court. It was said:

"Under the circumstances of this case, the testimony of claimant's husband to facts equally within the knowledge of the deceased should have been excluded, under 3 Comp. Laws (1897), § 10212, as amended by Act No. 30, Pub. Acts 1903. This case is not distinguishable from *Stackable* v. *Stackable's Estate,* 65 Mich. 515."

In *Re Day's Estate, supra,* the wife presented a claim for board, care, and incidental expenses

against the estate of the deceased. The items were separate. Objection was raised to the testimony of her husband as to the items of board. It was held:

"It is settled by authority that as to that part of the claim represented by plaintiff's services, * * * her husband would be a competent witness under the statute to testify in her behalf. This is upon the ground that as to her services he is not an assignor. *Ashley* v. *Smith's Estate,* 152 Mich. 197; *In re De Spelder's Estate,* 181 Mich. 153. But as to that part of the claim which is represented by the board a different rule appears to have been laid down. * * * *Stackable* v. *Stackable's Estate,* 65 Mich. 515. * * * The rule being established we must hold in the present case that the testimony of the husband concerning the board was incompetent."

The claim for board and room, if any, here involved belonged originally to the husband. He either assigned that claim to his wife or he did not. If he assigned it, he is incompetent to testify to matters equally within the knowledge of the deceased, because he is an assignor. If he did not assign the claim, and there is no proof in this case that he did, such claim, if any, still belongs to him and plaintiff cannot recover. The trial court was right in excluding the testimony of plaintiff and her former husband as to matters equally within the knowledge of the deceased.

Eliminating the testimony of plaintiff and that of her husband, the testimony fairly shows that, by reason of his relationship with the plaintiff, deceased expected to leave some of his property to her by will, but, becoming displeased with her conduct, he revoked the will which he had made. Complaint is made of the language of the trial court in which he

characterized the services rendered by the step-daughter as gratuitous.

"This class of claims should not be encouraged by the courts. Indeed, it is the duty of the courts to protect decedent estates from them, and to require some substantial proof establishing them before allowing juries to speculate as to the existence of the contract necessary to support them." *Wright* v. *Senn's Estate,* 85 Mich. 191.

"We have had frequent occasion to deal with cases of this kind, and it has often been said that it is the duty of courts to protect decedents' estates from claims of the character of this; and, while the rule in this State does not require that there shall be an express contract in terms, it does require that there shall be at least an implied contract, and that there shall be enough in the record to overcome the presumption arising from the family relation." *Decker* v. *Kanous' Estate,* 129 Mich. 146.

"The law will not imply from the discharge by a child of a purely filial duty an obligation of the parent to pay for the service. And, when the family relation exists, much which is done for and furnished to a member of the family by another or by other members is presumed to be gratuitously done or furnished. It is the relation, and the presumption arising therefrom, which is held to negative the existence of an implied contract to pay for what is accepted." *Weessies* v. *Van Dyke's Estate,* 159 Mich. 180.

As said in *Wright* v. *Senn's Estate, supra:*

"Care of an aged and infirm father by a daughter is usually dictated by the better instincts of a common humanity, and is so rarely bestowed upon contract that no implied contract can be predicated

upon its bestowal or receipt. The law will not associate with the discharge of a purely filial duty an implied obligation to pay for the same.''

We find no error in the court's statement.

In this case there is no proof the deceased ever promised plaintiff to pay for his room and board; ever promised plaintiff's husband he would pay for his room and board; that plaintiff kept an account against deceased or said anything to him in his lifetime about paying for his room or board or made any demand upon him for any payment. No proof to show that he unequivocally expected to pay for his room or board or that the plaintiff or her husband rendered the service in reliance upon any promise made by deceased in his lifetime they would be compensated. There is some testimony which was admissible as tending to support the claim made by plaintiff. There is testimony which fairly tends to rebut the same. The trial court passed upon these disputed questions of fact so far as they are sustained by competent testimony, and we are not disposed to interfere with the finding of the trial court thereon.

Judgment affirmed, with costs.

CLARK, C. J., and McDONALD, SHARPE, NORTH, FEAD, WIEST, and BUTZEL, JJ., concurred.