BERRY *v.* ADAMS.

WITNESSES — MATTERS WITHIN KNOWLEDGE OF DECEDENT — ASSIGNORS.

> One entitled to have property devised to her, who yields her claim, and consents to its being devised to her children, is an assignor, within 3 Comp. Laws 1897, § 10212, prohibiting an assignor of a cause of action from testifying to matters equally within the knowledge of a deceased defendant, and, in an action by the children, cannot testify to promises made by the deceased to her to leave it to them.

Appeal from Genesee; Wisner, J. Submitted October 27, 1899. Decided November 14, 1899.

Bill by Henriette Berry and another, infants, against Edwin M. Adams and Alexander W. Davis, as administrator with the will annexed of the estate of Hannah Harris, deceased, to establish a trust in property devised to defendant Adams. From a decree dismissing the bill, complainants appeal. Affirmed.

*A. E. Gibson* (*M. J. Lehmann*, of counsel), for complainants.

*Henry C. Van Atta* (*Rollin H. Person*, of counsel), for defendant Adams.

HOOKER, J. In 1868, Rose Marsh was left an orphan, at the age of 14, by the death of her father; her mother having died when she was 2 years old. After her mother's death, she lived with her aunt Mrs. Griswold until 1863. From that time she lived with another aunt, Hannah Harris, and Mrs. Griswold, until 1866, after which she lived with Hannah Harris. After her father's death, her aunt Hannah Harris obtained from her stepmother $300 in settlement of her claims against the estate

of her father, being appointed guardian of Rose Marsh
for the purpose. The money was used to pay a mortgage
upon the home of Hannah Harris, where she and Rose
resided. The complainants are children of Rose Marsh.
It is claimed on their behalf that, by agreement between
Hannah Harris and the child Rose Marsh, this money was
to be used to pay off the mortgage, that they were to live
upon the premises together, and that Rose Marsh was to
have the property at the death of her aunt. It is said
that, acting under this agreement, they occupied the
premises together; that Hannah worked out as a domestic,
and Rose as a school teacher; and that in 1873, by their
mutual efforts, they succeeded in rebuilding the house.
Rose Marsh became of age in 1875, and married John
Berry in 1877. Complainants are children of this mar-
riage. It is alleged further that John Berry was not a
good manager, and that on Christmas night, 1888, a new
arrangement was made. Mrs. Berry is the only witness
who testified to this arrangement, and she said:

"On Christmas night we got to talking over matters in
general, and she inquired into my husband's affairs and
into the condition of our affairs. My husband was running
the store that had formerly been my uncle's; and she
was inquiring whether we had got it paid for, how much
we owed on it, etc. I says, 'No, we have a mortgage on
it to a certain amount.' She rather inferred that my
husband would not be able to pay for it. She did not
admire his financiering at all. She says, 'It will be the
same with my place if I leave it to you entirely.' She had
always referred to the place, when speaking of it, as
'mine.' She says: 'It will be the same. Your husband
will not be able to keep it long. It will be gone and
squandered. And I think, if you are willing, it will be
better for me and you and all concerned to make my will
in favor of your children. It will be your home just the
same. You can do just as you like. I think it will be the
better plan if you are willing.' Consequently, I thought,
if it would please her,—I knew she did not like my hus-
band very well,—I thought maybe it would please her,
and make less hard feeling between them. I says: 'I
don't care. If it would please you any better, do so.' She

says, 'I will.' We talked about it some time. That was the lengthy part of the conversation. It was understood then and there that she was to do it.

"*Mr. Person:* You are telling what she said, are you not?

"*A.* I am.

"*Q.* Tell all that was said?

"*A.* As near as I can remember.

"*Q.* All you remember?

"*A.* Yes, sir.

"*Q.* That is what you meant when you said it was understood?

"*A.* I had understood that it was to be in the children's name—my two children's name—in her will in place of my own, as she had always agreed to will everything she had to me, and, instead of willing it to me, she was to will it to my two children. That was in 1888. She died in 1894, July 1st."

On cross-examination she said:

"*Q.* Will you state the language used by each of you as near as you can?

"*A.* As near as I can— I can't give the exact conversation. It was something after this manner: 'Your husband will use it up. You will not have any home for yourself, and you won't be any better off than you are now. Consequently, I think it better to fix that so that he cannot use it; and, if I make my will to the children, your husband will be unable to dispose of it. If this is agreeable to you, Rose, and you don't care, we had better have that arrangement made, and I will have my will made in favor of your children in place of you.' I answered after this manner: 'If it will please you, aunt, I don't care. It will do my children more good than it will me.' That is the substance of it."

A witness named Davis testified that he drew such a will in 1892 or 1893, and that Hannah Harris destroyed it later, and made a will devising the homestead to the defendant Adams, and some personal property to Mrs. Berry.

The bill seeks to establish a trust in favor of the children of Rose Marsh Berry under the contract and arrangement mentioned. It was dismissed by the circuit court, and the complainants have appealed.

It is manifest that the testimony of Rose Marsh Berry is indispensable to the complainants, for without it their case is not proved. Her testimony was taken under the objection that it was incompetent, under the statute, as being in relation to matters equally within the knowledge of the deceased. Were Rose Marsh Berry seeking to enforce the original contract in her own name, there can be no doubt that the objection to her testimony would be good. It is also true that, if the complainants were assignees of her rights under that contract, the objection would be good, because the statute prohibits testimony by assignors. See 3 Comp. Laws 1897, § 10212. Counsel for the complainants make an ingenious argument in support of the claim that Rose Marsh Berry is not an assignor to the complainants. It is true, nevertheless, that, previous to the talk on Christmas night, Rose Marsh Berry, if any one, had a right to have this property devised to her; and the claim here is that the complainants have acquired these rights. She did not sell them to complainants, but she claims that, upon request of Hannah Harris, she consented that the property should be devised to them instead of to herself. To all intents and purposes it was a gift to them of her claim, if it was anything, and, in effect, an assignment to them of her rights. She was, therefore, prohibited from testifying by the statute, as she would have been had she attempted to enforce the alleged contract upon her own behalf.

The decree is affirmed.

The other Justices concurred.