CASWELL *v.* SMITH'S ESTATE.

WITNESSES—HUSBAND AND WIFE—MATTERS EQUALLY WITHIN
KNOWLEDGE OF DECEASED—STATUTES.

> In husband's claim against estate of decedent, based on alleged
> oral contract for services to be rendered by himself and mem-
> bers of his family, including his wife, who also filed claim for
> her services, which, it is conceded, will be merged in husband's
> claim, if allowed, wife is interested party, and therefore her
> testimony is barred by statute as being equally within knowl-
> edge of deceased (3 Comp. Laws 1929, § 14219). McDONALD,
> C. J., and CLARK and NORTH, JJ., dissenting.

Appeal from Mason; Pugsley (Earl C.), J. Sub-
mitted January 18, 1933. (Docket No. 106, Calendar
No. 37,003.)  Decided June 5, 1933.

Sidney R. Caswell presented his claim against the
estate of Lydia Elizabeth Smith in the probate
court. On appeal to the circuit court, verdict and
judgment for plaintiff. Defendant appeals. Re-
versed.

*Matthews, Williams & Von Sprecken (I. A. Fish,*
of counsel), for appellant.

*A. A. Keiser (F. E. Wetmore,* of counsel), for ap-
pellee.

NORTH, J. (*dissenting*). This suit arises out of a
claim for $60,000 made by appellee Sidney R. Cas-
well, herein called plaintiff, against the estate of
Lydia E. Smith, deceased. Plaintiff asserts that,
in consideration of an abandonment by him in 1919
of a plan to remove his family from Ludington to

Detroit, where he had employment with a manufacturing concern at an annual salary of $3,000, and of his continuing to maintain his family residence in Ludington nearby that of Miss Smith, so that he and his family might continue to render services to her as they had theretofore done, Miss Smith agreed she "would at her death give or leave to the said Sidney R. Caswell a sum of money that the interest thereof would amount to the sum of $3,000 per year." Miss Smith died January 30, 1930. By her will executed February 11, 1926, Miss Smith disposed of all her estate, inventoried at upwards of $160,000, without provision of any kind for plaintiff or any member of his family. On the basis of having fully performed this alleged agreement, plaintiff filed a claim for $60,000 against the estate of deceased. In probate court the claim was allowed, and on appeal to the circuit court the jury found for plaintiff. From a judgment entered in accordance with the verdict, the estate has appealed.

The record discloses that from 1912 until the death of Miss Smith in 1930, plaintiff's family lived in the same neighborhood and in close association with the deceased. Prior to the date of the alleged agreement (1919), both Mr. and Mrs. Caswell, as well as their children, had almost continually performed services of varied character for Miss Smith. Many times, if not quite universally, these services were performed at the request of Miss Smith and without any compensation therefor. Aside from persons at times employed in her household, Miss Smith lived alone. The services rendered both before and after 1919 by plaintiff and members of his family included general assistance in relation to the care and upkeep of Miss Smith's home, and her personal needs both in health and in sickness. Such

services were also rendered incident to aiding Miss Smith in social matters and in taking her about in plaintiff's automobile. Plaintiff asserts that Miss Smith desired to have such relations and services continue during the remainder of her life, and to accomplish that purpose she made the above-noted agreement with plaintiff.

Because of the statute relative to testifying to matters equally within the knowledge of the deceased, plaintiff could not and did not attempt to testify relative to the agreement upon which he relies (3 Comp Laws 1929, § 14219). The direct testimony on this part of the record was given by plaintiff's wife and Mrs. Jessie Dodds. From Mrs. Caswell's testimony we quote:

"Miss Smith said (to plaintiff) 'If you will stay here, I will give you an amount that will bring you $3,000 a year in interest.' (To this Mr. Caswell replied) 'Miss Smith, I will take you up on that, and if you should change your mind at any time, let me know.' * * * From the time of this talk in 1919, Miss Smith never expressed any dissatisfaction or change of mind to me. * * * Why she told him it was the family she wanted to stay here in Ludington; she wanted to have the companionship of the family, and wanted them to be with her and help her, and do anything she wanted done—or me. * * *

"Q. Was there anything said there in that talk, as to how long these services were to continue; that is, how long you were to stay in Ludington?

"A. Why until her death."

Mrs. Jessie Dodds, referring to her being present in the Caswell home at the time of the alleged agreement, in part testified:

"Miss Smith was deeply grieved to know that Mr. Caswell was thinking of going away, and she said: 'Lizzie (Mrs. Caswell), this cannot be. * * *

I need you people here. * * * I cannot have you leave me now.' * * * Shortly, Mr. Caswell came; and then she said to Mr. Caswell: * * * 'Sidney, you are not thinking of going away and leaving me in my old age; I cannot have your family leave here, * * * I want you here.' * * * And she asked him what his salary would be. * * * He said $3,000. * * * And she said: 'Sidney, you cannot leave me now, my boy;' and she says 'How would a nice sum, with interest alone to pay you $3,000 a year, would this mean anything to you, Sidney, my boy?' Those were her exact words. * * * He did not reply at once, * * * and he left the room, and Miss Smith and Mrs. Caswell continued the conversation. * * * And Sidney returned, and said: 'Miss Smith, I have thought this over, and I am going to take you up on it. * * * If the occasion should come when there will be any changes in this, I want to know.' And she said: 'There will be no changes.' "

Aside from the foregoing there was testimony of other witnesses which to a greater or less degree was corroborative of that just noted. We quote from two only. Agnes Brandt testified as follows:

"Miss Smith told me the Caswells were planning to go away, and she persuaded them not to go, and told them they would not be sorry if they stayed, so they stayed. She told me they stayed under that arrangement. She didn't say just what the arrangement was."

Vinette Yockey, testifying to a conversation between herself and Miss Smith while on a Sunday afternoon auto ride, said:

"And she (Miss Smith) was telling how much she appreciated that (the care and attention given her by the Caswells); and then she said 'But they won't be unrewarded for all the kindnesses they have done for me,' she said, 'because when I die they will

get amply paid; I am going to leave them money that will be payment for all this that was done, * * * they are to be rewarded beyond their greatest or fondest expectations.' "

It is not seriously controverted that the members of the Caswell family continued to render Miss Smith during the balance of her life the same services after the date of the alleged agreement as theretofore. Instead, the main issue here presented is whether the alleged agreement was established by competent testimony. Appellant asserts that because the alleged contract contemplated the rendering of services by Mrs. Caswell, which services were of such a character that she could recover for them in her own right, she is excluded from testifying to matters equally within the knowledge of the deceased (3 Comp. Laws 1929, § 14219), either because she must be considered a party to the contract, or because recovery by Mr. Caswell for his wife's services of this character must be on the theory that her claim has been assigned to him, in which case the statute applies to her as an assignor. In this connection it must be borne in mind that the contract between Miss Smith and Mr. Caswell was entered into in the presence of Mrs. Caswell. Under such circumstances if Mrs. Caswell co-operated with her husband in the performance of the contract, knowing that he was to be compensated therefor, she could not be heard to assert a claim in her own right for the same services. Under the contract as asserted by plaintiff, he assumed the responsibility of securing the co-operation of Mrs. Caswell to enable him to perform the terms of the agreement and understanding he had with Miss Smith. If he fully performed his contract, it was nonetheless binding on Miss Smith because to some extent he was

assisted in such performance by Mrs. Caswell. On the other hand, had he not been so assisted by the co-operation of Mrs. Caswell, obviously he would have breached the alleged contract and could not recover. It seems plain that the contract on the one side was wholly the undertaking of Mr. Caswell, and that his wife was not one of the contracting parties, nor was she an agent of plaintiff in consummating the contractual relation. See *Weessies* v. *Van Dyke's Estate,* 159 Mich. 180. We think it is equally clear that under this record Mrs. Caswell does not stand in the position of an assignor as to any portion of the claim asserted by her husband. She had no interest in the contract as such, nor has she any interest, in a legal sense, in money recovered by Mr. Caswell in consideration of performance of his undertaking with Miss Smith.

"An 'interested witness' is one who has a pecuniary interest, having prospect of gain or loss.

"Relationship does not constitute a witness an interested one, but the fact of relationship should be considered as regards credibility." *Denevan* v. *Belter* (syllabi), 232 Mich. 664.

The trial court was correct in holding that Mrs. Caswell, notwithstanding the statute, was competent to testify to matters equally within the knowledge of the deceased.

Appellant further asserts that the record does not show or sustain a cause of action in favor of plaintiff. In this connection it should be borne in mind, as stated in appellee's brief:

"There has never been any claim urged by claimant that he was to receive his compensation by will. His claim is that it was a money debt, the amount of which was fixed and collectible upon the death of the deceased."

As quoted above, appellee's claim is that deceased "would at her death *give* or *leave* to the said Sidney R. Caswell, a sum of money that the interest thereof would amount to the sum of $3,000 per year." Notwithstanding appellant's contention to the contrary, we are satisfied that the record contains testimony, in part hereinbefore quoted, sufficient to sustain the jury's finding that the agreement was made as alleged; and it cannot be said as a matter of law that the record does not "show any cause of action in favor of claimant." The agreement or contract on which plaintiff relied was not testamentary in character, and therefore was not void because not in writing. Nor was plaintiff's right to recover barred by the statute of limitations. This phase of the case is controlled by *Bassett* v. *American Baptist Publication Society,* 215 Mich. 126 (15 A. L. R. 213). The issue of performance by plaintiff was properly submitted to the jury and determined in plaintiff's favor.

Mrs. Caswell also filed a claim against the estate of deceased for care and services rendered. It appears from the record that this claim of Mrs. Caswell in whole or in part is duplicated by plaintiff's claim herein. Appellant offered in evidence the claim sworn to by Mrs. Caswell and filed in the Smith estate, claiming it was relevant, competent, and material as tending to show the incompetency of Mrs. Caswell to testify as a witness, and also to show a breach of the alleged contract by plaintiff, in that it gave rise to the inference that he had not complied with the terms of his contract requiring continuation of the services theretofore rendered by Mrs. Caswell to Miss Smith. After filing Mrs. Caswell's claim nothing further was done relative thereto; and it was asserted to the trial court that the

claim was so filed to enable Mrs. Caswell to recover for services rendered and which constitutes a part of plaintiff's claim herein in the event he failed to recover in the instant case. Plaintiff's counsel also represented Mrs. Caswell relative to her claim; and such counsel repeatedly stated to the trial court that in the event of recovery by plaintiff in this case no claim could or would be made by Mrs. Caswell to recover from the Smith estate for the same services. The trial court ruled that this testimony might be "unconditionally" received, but not alone for the restricted purposes for which it was offered by appellant. In this connection the trial court said to appellant's counsel:

"If you wish to introduce this (Mrs. Caswell's claim) in evidence, upon the question that she (Mrs. Caswell) has taken two inconsistent positions here, and as bearing upon the weight that should be given to her testimony, I am willing to receive it."

Appellant's counsel replied:

"I am not offering this as an admission by Mrs. Caswell. I do not propose to qualify her as a witness. Even as an admission against him, I won't offer that as an admission; as a contradictory statement to the evidence she gave. I do not propose to offer it as a contradictory statement to the evidence she gave as a part of her cross-examination."

Under the circumstances, there was no error in excluding the testimony as being incompetent for the purposes for which it was offered. The competency of Mrs. Caswell's testimony was a question of law for the court and not a question of fact for the jury; and under the circumstances above outlined the proffered proof did not tend to establish a breach of plaintiff's contract or partial failure of

consideration. There was no error in the ruling of the trial judge excluding the testimony, in view of the restrictions imposed by appellant.

The inventory of Miss Smith's estate totaling in excess of $160,000 was received in evidence. Appellant objected on the ground that the inventory showing the amount of her estate in 1930 was of no evidentiary force as to the extent of her possessions in 1919, the date of the alleged agreement; and therefore the offered proof was immaterial, it not having any bearing upon the probable consummation of the 1919 agreement on which plaintiff relies for recovery. When the inventory was received in evidence, at the request of defendant's counsel, the court charged the jury:

"And further, I charge you, that it (the inventory and appraisal) is not evidence of the existence of the properties therein described, nor their value, at the time it is claimed the plaintiff, Sidney R. Caswell, entered into the contract with Miss Smith, for which suit is here being brought, if there was such a contract; neither is it evidence of the present values of these securities. It is received merely as the list of property, and the appraisal of the appraisers as of the time it bears date and for nothing else."

It may be noted that the inventory was at least competent as tending to corroborate the testimony of Miss Vinette Yockey (and other testimony of like character) to the effect that the deceased only shortly before her death had said the Caswells would "be rewarded beyond their greatest or fondest expectations." The extent of her estate as disclosed by the inventory at least indicated ability on the part of the deceased to so reward the Caswells, and it bore upon the probability of her having made

statements of this character, to which various witnesses testified. Further, in view of the fact that the alleged agreement was of a continuing character, under which plaintiff claims he and members of his family continued to render service to Miss Smith to the time of her death, we think the inventory of her estate showing she was possessed of ample means had some evidentiary bearing upon plaintiff's claim of continuing to perform under the contract during the period from its inception in 1919 to the death of Miss Smith in 1930. In view of the precautionary instruction given to the jury at the time the inventory was received in evidence, the ruling of the court was not prejudicial.

In appellant's brief it is asserted that no proof was offered that the service rendered by plaintiff and the members of his family was so rendered in performance of the alleged contract. This contention cannot prevail in the face of the fair and reasonable inferences which the jury had a right to draw from the testimony as a whole, and especially from the testimony as to the declarations of Miss Smith made shortly prior to her death, as testified to by Miss Yockey and others. We find no reason for disturbing the verdict of the jury or setting aside the judgment entered in the circuit court. It should be affirmed, with costs to appellee.

McDONALD, C. J., and CLARK, J., concurred with NORTH, J.

WIEST, J. Plaintiff presented the following claim against the estate of Lydia Elizabeth Smith, deceased:

"That on or about the month of July, 1919, the said Sidney R. Caswell was about to remove from

the city of Ludington to the city of Detroit, where he had an offer of employment at $3,000 per year with prospect of advancement, which said offer being communicated to the said deceased, she thereupon agreed to and with the said Sidney R. Caswell that if he would stay with his family in the city of Ludington and continue to render services to the said deceased as he and his family had theretofore done, that she, the said Lydia Elizabeth Smith, would at her death give or leave to the said Sidney R. Caswell a sum of money that the interest thereof would amount to the sum of $3,000 per year.

"That relying upon said agreement and assurance of the said Lydia Elizabeth Smith, this claimant did not remove to the city of Detroit, but stayed in the city of Ludington and retained his residence in close proximity to the home of the said Lydia Elizabeth Smith, and he and his family continued to furnish services, companionship, and comfort to the said Lydia Elizabeth Smith, during the entire remainder of her life, and that thereupon the said claimant became and was entitled to have the said contract so made between this claimant and the said deceased fully performed and became and was entitled by reason of his full performance of his contract to have awarded to him a sum of money sufficient that the interest thereon would amount to $3,000 per year, which sum would amount to and should be the sum of $60,000, which said sum this claimant by this says is due to him by reason of the services so performed by this claimant and his family in performance of the contract heretofore entered into between him and the said deceased."

Elizabeth Caswell, wife of the plaintiff, at the same time, presented her claim against the estate as follows:

"To services rendered by claimant to the deceased at her request continuously and daily throughout various hours of the night and day as

companion, maid, housekeeper, and general servant from January 1, 1912, to the time of the death of the above named Lydia Elizabeth Smith, deceased, on, towit, the 30th day of January, A. D. 1930.

"Said services consisted not only in acting as companion, nurse, and maid to the deceased, as aforesaid, but also in keeping in constant readiness at all times of the day and night to render service, of the character described, and other services, and being constantly at the call of said deceased at all times of the day and night assisting her with her housework, cleaning, doing her shopping, helping her in her preparation for parties, combing and dressing her hair, and bestowing upon her personal attention of all and every kind required by her, and in claimant keeping herself near to the telephone where she would quickly and promptly respond to every call made by deceased and by carrying out sundry and divers instructions of said deceased concerning arrangements to be made after the death of said deceased.

"937 weeks @ $18 (a week) per week...$16,866."

Upon appeal to the circuit court, plaintiff had verdict and judgment thereon for $60,000, and interest from the date of the death of Lydia Elizabeth Smith. Defendant estate prosecutes an appeal.

At the trial plaintiff called his wife to prove the contract. Objection was made on the ground that her testimony was excluded by the statute (3 Comp. Laws 1929, § 14219), because she was a party to the alleged contract in that her services were contracted for, and, therefore, an integral part thereof, and directed the attention of the court to the claim filed by plaintiff and also to the fact that the witness had filed her claim in the probate court for the same services which plaintiff sought to recover for in this case. Thereupon counsel for plaintiff urged that, when the case was here on appeal from summary

judgment (257 Mich, 461), the question was raised and:

"If the Supreme Court had considered there was any merit in this proposition, they know how to send a case back and fix it so you can't try it again; and they could have said that in any event, the claim of the defendant would be sustained so far as the testimoney of Elizabeth Caswell is concerned.

"They could have said, this case goes back for a new trial, and if her testimony was incompetent, they would have eliminated it in that decision. Why send it back when it is not the case. It was argued; it was in the brief; it was answered by our brief, and the court sends it back for a new trial without referring to that at all.

"Why, we would have to say that the Supreme Court were setting traps for somebody so as to reverse cases. Why send it back for a new trial and allow this testimony to stay in there, when the case would be reversed for allowing it to get in.

"I say that matter is *res judicata* in this case."

The court overruled the objection. Mrs. Caswell testified:

"Well, we were talking to each other over the telephone, and I told her we were going to move away; and Miss Smith came over, and she was all excited when she got to the house and she sat down a few minutes, and she said 'You cannot go; I want you here; I don't know how I can get along without you;' and Mr. Caswell came in and said 'Miss Smith, I have been offered a position in Detroit where I will get $3,000 a year; there is nothing in Ludington for me; and I have got to move in order to take care of my family,' and Miss Smith said 'If you will stay here, I will give you an amount that will bring you $3,000 a year in interest.'

"*Q.*  What did Mr. Caswell say about that, when she told him that?

"*A.*  Well, he stood there for a few minutes and he did not answer her right away, and he walked out in the other room, and in a short time he came back and said: 'Miss Smith, I will take you up on that, and if you should change your mind at any time, let me know.' "

The witness then detailed the services she rendered Miss Smith. Mr. Caswell was a commercial traveler, was away most of the time, rendered slight personal service, and his wife and children performed the services. Counsel for defendant offered the claim, filed by Elizabeth Caswell against the estate, for the purpose of showing the incompetency of the testimony of Mrs. Caswell. This was objected to, and in the discussion it was stated that, before the commissioners on claims, the following occurred:

"*Mr. Keiser:*  I have already stated to the commissioners—I don't know whether it is in the record or not—I do not find it there—it is my position no one would ask for double compensation. We feel that this account is entitled to be allowed in full; and if so, I am satisfied Mrs. Caswell would not press her claim.

"*Mr. Wetmore:*  My idea is this: That if through some technicality, Mr. Caswell should be held not able to recover anything, that then Mrs. Caswell might possibly recover on *quantum meruit,* but I will say that if the claim of Mr. Caswell is allowed, there is no question in my mind but what (that) merges into it, the claim of Mrs. Caswell. That has been my idea, and Mr. Keiser and I are in accord on that; that is, if there should be some insurmountable legal difficulty; but if the Caswell claim is allowed, I am satisfied it would bar Mrs. Caswell. Now that is my position."

And Mr. Wetmore, counsel for plaintiff, said:

"And that is my position right today."

Also—

"But we are not pressing Mrs. Caswell's claim here. Let's take it that way. Let's say this claim was allowed. Two claims for the same services can be filed; and you cannot void one by the other, by any means, and void both of them; and that is what they are attempting to say and do, if they cause Mrs. Caswell's claim, to void the Sidney Caswell contract. * * *

"If this were for services outside the contract with Sidney Caswell and Miss Smith, then she would be entitled to recover for them, but I think I have barred Mrs. Caswell of ever prosecuting her claim by the statement made here in probate court, except this,—just as I stated there, we made the reservation, if there should be some insurmountable obstacle come in here that prevented Mr. Caswell from recovering, then Mrs. Caswell might recover what her services were reasonably worth.

"*The Court:* In other words, if you fail to establish—your position is—if you fail to establish the contract upon which you rely, then the services rendered by Mrs. Caswell—then the services rendered might be a subject of *quantum meruit*?

"*Mr. Wetmore:* If Mrs. Caswell had; not Sidney Caswell, because he has exhausted his remedy here in this case. Any judgment here would be *res judicata* against Sidney Caswell.

"*The Court:* He has elected his remedy?

"*Mr. Wetmore:* Yes, and it is irrevocably set.

"*The Court:* Then her claim would be limited to whatever was not within the scope of the agreement he made?

"*Mr. Wetmore:* I think we went further than that. I went further than that, because I say here, and my idea is this: This would not bind Mrs. Caswell; there is no question about that. If I have gone

too far and possibly said too much, I would be faced with it if Mrs. Caswell ever attempted to file a claim here.

"*The Court:* Do you think you could bind her?

"*Mr. Wetmore:* Yes; because she had a case and I was her attorney in this same matter. * * *

"Mrs. Caswell has been a witness here, and testified to the services right here in open court and makes no claim outside of this what I am now stating; there would be an estoppel grow up on the part of Mrs. Caswell at least. She comes in here as a witness; she is the wife of the plaintiff in this case, and there can be no question but what the rule of estoppel would come in here. Mrs. Caswell is absolutely estopped, if Sidney Caswell is paid for the services which he claims were rendered by himself and family there, and she has testified to them. She makes no claim here in court, for she was on the witness stand to say that she was willing to abide by the statement of her counsel; I say—if she did that, it would make no difference anyway. That is a matter that you will determine later. It is not a split-up and indivisible cause of action; it is not that at all. * * *

"It strikes me that the court will not pass upon the Elizabeth Caswell case at this time.

"*The Court:* Let me see the claim."

The court refused to receive the evidence for the purpose of affecting the competency of the witness. Thereupon counsel for the estate made a record for the purpose of review. Was the testimony of Mrs. Caswell barred by the statute, 3 Comp. Laws 1929, § 14219? That statute bars the testimony of an opposite party on matters equally within the knowledge of a deceased person.

"It is well settled in this State that the opposite party does not necessarily mean a party to the record; but it means any person whose interests are,

as matter of fact, antagonistic to the interests of those for whose benefit the statute was passed." *Cutter* v. *Powers,* 200 Mich. 375, 386.

The bar may be made to appear by extrinsic evidence.

Justice COOLEY in *Bachelder* v. *Brown,* 47 Mich. 366, said:

"It has been held under statutes similar to this in their general purpose, that the substantial party is within the intent."

As stated in 40 Cyc. p. 2272:

"It is sufficient to exclude a party that he is actually adverse in interest to the representative, etc., of a decedent, although he may not be adverse to such representative upon the record."

A witness may be an opposite party in interest although not an opposite party of record in the suit.

The mutual interests of this husband and wife arise from one and the same alleged contract, and, while ostensibly divided for the purpose of suits, the mutuality is emphatically evidenced by the statements of their counsel that, if plaintiff herein is successful, the wife will be estopped from pressing her claim. This witness was so much a party in interest in establishing plaintiff's claim that her counsel, in an effort to remove her disqualification, stated that, if plaintiff was successful, her claim against the estate would be waived. This necessarily implied merger or estoppel on the ground that she was a party in interest. It is evident that the claim filed by Mrs. Caswell was an anchor to windward, to be hoisted aboard the family craft if her testimony held the ship off the bar, otherwise suit-wreck would be considered single and the wife's craft would appear in the offing.

It seems to me that Mrs. Caswell's claim, if any, has become so merged in that of her husband, if he recovers, that she is a party in interest and cannot testify to matters equally within the knowledge of deceased.

Her services were cast into the consideration for the promised gift and she will share in the fruit of their joint endeavors. A witness in interest cannot have disqualification removed by a statement of counsel that, in case her husband has recovery, no claim will be made in behalf of the witness. The testimony of Mrs. Caswell should have been excluded.

When the case was here before (257 Mich. 461), we were not called upon to, nor did we, pass upon the competency of the testimony of Mrs. Caswell. The question there determined was the right of the court to enter a summary judgment upon the claim against the estate.

The judgment is reversed, and a new trial granted, with costs to defendant.

SHARPE and BUTZEL, JJ., concurred with WIEST, J.

POTTER, J. (*concurring in reversal*). I concur with Mr. Justice WIEST. A wife, under the so-called "married women's act (3 Comp. Laws 1929, § 13057 *et seq.*)," may, with the consent of her husband, engage in business on her own account (*Tillman* v. *Shackleton*, 15 Mich. 447 [93 Am. Dec. 198]; *West* v. *Laraway*, 28 Mich. 464), and she may sue and collect for personal services performed by her; and, in case such services were performed for a person who dies before the settlement of her claim, she may present in her own name a claim against the estate of such deceased person, to get pay for the services performed, independent of any claim her husband

may have, under some circumstances, to her services. *Slack* v. *Norton*, 111 Mich. 213; *Ashley* v. *Smith's Estate*, 152 Mich. 197; *In re De Spelder's Estate*, 181 Mich. 153; *In re Day's Estate*, 197 Mich. 604; *Hartle* v. *Keefer's Estate*, 260 Mich. 188. In case services like those involved here were performed by the wife, and the most of the services involved were performed by her, such services were her property and belonged to her, and she could maintain a claim against the estate of the deceased person to recover therefor. In this case she did present a claim for $16,866 for personal services. In the trial of this case it was conceded that if plaintiff's claim was allowed the wife would be estopped from enforcing her claim. "This statute is intended to reach the real party in interest and not a mere nominal party." *Penny* v. *Croul*, 87 Mich. 15 (13 L. R. A. 83). The proviso inserted in the statute in 1885 was for the express purpose of preventing the practice which had prevailed under the statute before such amendment of assigning the claim against the estate of a deceased person and then having the assignor sworn as a witness to prove it. *Stackable* v. *Stackable's Estate*, 65 Mich. 515; *Penny* v. *Croul, supra*.

"The legislature intended not only that the party owning the claim should not be permitted to testify to the matters equally within the knowledge of the deceased person but also to prevent any evasion of the statute." *Penny* v. *Croul, supra*.

If the wife performed the contract or any part of it with deceased, either the proceeds of such performance accrued to her, in which case her husband, who here presents a claim for such services, is her assignee, and she is incompetent to testify to matters equally within the knowledge of deceased

(*Stackable* v. *Stackable's Estate, supra; Berry* v. *Adams,* 122 Mich. 17; *Finn* v. *Sowders' Estate,* 139 Mich. 623; *In re Day's Estate, supra; Hartle* v. *Keefer's Estate, supra*), or she was his agent in at least the part performance of the contract, in which case she is equally incompetent to testify to matters equally within the knowledge of deceased (*In re Reidy's Estate,* 162 Mich. 154). On the record, there is no question but what as to that part of the claim for services which belonged to the wife, included in the judgment for plaintiff, he stands in the position of an assignee. *Stackable* v. *Stackable's Estate, supra; Berry* v. *Adams, supra.* It is immaterial that claimant's wife is not a party of record. The statute applies to any person whose interests are as a matter of fact antagonistic to the interests of those for whose benefit the statute was passed. *Cutter* v. *Powers,* 200 Mich. 375. The services for which plaintiff's wife presented a claim are included in the claim of plaintiff. To all intents and purposes there was a gift from her to him of her part of the claim, and in effect an assignment to him of her rights.

"She was, therefore, prohibited from testifying by the statute as she would have been had she attempted to enforce the alleged contract upon her own behalf." *Berry* v. *Adams, supra.*

1. Claimant cannot testify under the settled construction of the statute to matters equally within the knowledge of the deceased.

2. Plaintiff's wife cannot testify to matters equally within the knowledge of the deceased because she stands in the position of an assignor. Judgment reversed, with costs. New trial granted.

FEAD, J., concurred with POTTER, J.