MITRAGE *v.* BANKERS LIFE & CASUALTY COMPANY.

1. WITNESSES—MATTERS EQUALLY WITHIN KNOWLEDGE OF DECEASED
OPPOSITE PARTY—ASSIGNMENTS.

   A party may not, by assignment of a claim, remove disability
   to testify to the matters equally within the knowledge of a
   deceased opposite party (CLS 1961, § 600.2160).

2. SAME—MATTERS EQUALLY WITHIN KNOWLEDGE OF DECEASED—
ASSIGNMENT—REMOVAL OF DISQUALIFICATION.

   Deceased insured's daughter did not remove her disqualification
   to testify as to matters equally within knowledge of insurance
   agent who was dead at time of trial as to representations the
   agent had made to insured at time medical-hospital expense
   policy was solicited, by assignment of her interest in her
   father's estate (CLS 1961, § 600.2160).

Appeal from Genesee; Parker (Donn D.), J.   Sub-
mitted May 5, 1964.   (Calendar No. 47, Docket No.
50,483.)   Decided September 3, 1964.

Action by Mary Mitrage, administratrix of the
estate of Ragib Mitrage, deceased, against Bankers
Life & Casualty Company, a corporation, for cash
benefits under hospitalization policy.   Judgment for
defendant.   Plaintiff appeals.   Affirmed.

*Joseph & Joseph (Joseph R. Joseph,* of counsel),
for plaintiff.

*Burroughs, Buck, Stalker & Chapman (Robert D.
Stalker,* of counsel), for defendant.

---

REFERENCES FOR POINTS IN HEADNOTES
[1, 2]  58 Am Jur, Witnesses §§ 324, 325.

O'HARA, J. Review here is of a judgment of no cause of action entered by the trial court at the conclusion of plaintiff's proofs in an action upon a medical-hospital insurance policy. A jury had been demanded by plaintiff but waived at the opening of the trial.

The case involves an interpretation of the "dead man's statute" so-called.[1]

It is the claim of plaintiff-administratrix that defendant's agent made various oral representations to her deceased husband concerning cash benefits payable directly to him in the amount of medical and hospital expenses actually incurred, irrespective of other medical hospital insurance (Blue Cross) payable directly to the doctor and hospital.

A mail solicitation for so-called "White Cross" coverage included this language:

"Free information about the low-cost health insurance plan under which you can get, direct-by-check, money for medical or hospital bills, regardless of whether or not you are covered by other medical insurance."

Plaintiff's decedent sent for the information, and a company agent called upon and sold him the coverage. A premium of $209.68 was paid. The policy (or policies) were issued June 13, 1961. The insured died April 9, 1962, after considerable hospitalization and medical treatment, the total cost of which is claimed to be $7,952.77. Recovery of this amount was sought under a 4-count declaration alleging reliance on the agent's oral representations that the policy covered the whole amount. The company denied any liability and raised special defenses that the policy as written contained the whole agreement between the parties, and fraudulent concealment of a cancerous condition.

---

[1] CLS 1961, § 600.2160 (Stat Ann 1962 Rev § 27A.2160).

It is of no benefit to review the testimony other than to say that for the purpose of recovery, testimony of decedent's daughter was essential to plaintiff's case. She was present at the time the company agent called upon her father and allegedly made the representations relied upon. Prior to trial, the agent died. When the daughter sought to testify, the defense interposed the defense that the statements, if made, were equally within the knowledge of the deceased agent. Before trial, decedent's daughter executed an assignment of her interest in her father's estate to her mother, plaintiff-administratrix. Additionally, the witness, daughter Brenda, executed a "declination" to share in the proceeds of the estate. It is agreed by the parties that the instruments were executed with the express purpose of rendering Brenda's testimony as admissible, by removing her from the category of an opposite party in interest.

Thus, the controlling question for us becomes the effect of Brenda's attempted disclaimer and assignment. Her testimony as an heir-at-law of her deceased father was subject to challenge by defendant under CLS 1961, § 600.2160(3) (Stat Ann 1962 Rev § 27A.2160[3]):

"When any action or proceeding is prosecuted or defended by any corporation, the opposite party, if examined as a witness in his own behalf, shall not be admitted to testify at all in relation to matters which, if true, must have been equally within the knowledge of a deceased officer or agent of the corporation, and not within the knowledge of any surviving officer or agent of the corporation."

Neither Mrs. Stevens' assignment to her mother of her interest in her father's estate, nor her written declinature of any interest therein, removes the bar of the statute, since CLS 1961, § 600.2160 subd (4) (Stat Ann 1962 Rev § 27A.2160 subd [4]) provides:

"Whenever the words 'the opposite party' occur in this section they shall be deemed to include the assignors or assignees of the claim or any part thereof in controversy."

Plaintiff's counsel diligently queried the court as to the precise reason for refusing to admit Brenda's testimony as follows:

"Your Honor, may the record clearly show the court has forbidden Brenda Stevens [nee Mitrage] from testifying because—does the court say she can't testify because of the failure of the assignment or because she is an heir or what does the court—

"*The Court:* Because of the statute. * * * Frankly, I hope you are in a mood to test this out, because I think it's an unfair law, but I think it's the law."

By no stretch of judicial interpretation could we possibly construe the statute in question to allow Brenda's "disclaimer" or assignment to remove her disability to testify to the matters equally within the knowledge of the deceased agent. Whatever our view as to whether the statute in this case promoted justice or defeated it, we are bound, as was the trial court, by the clear wording of the act. Brenda, by operation of law or as the trial court said "because of the statute" was an opposite party as regards an action being prosecuted by her father's estate, and an action being defended by the corporation (defendant).

Indicative of the intent of the statute is the amendment including the phrase "assignor and assignee of the claim" which was added by PA 1885, No 139. The amendment was construed in *Stackable* v. *Estate of Stackable,* 65 Mich 515, 518:

"The object of the amendment evidently was to prevent the common practice of a claimant against

an estate assigning his claim to another, and thereby becoming eligible as a witness, and defeating the spirit and intent of the statute as it stood before such amendment."

It was no more effective for Brenda to attempt to assign or "disclaim" her interest in the estate to effectuate the unpermitted purpose than to assign a claim, or part thereof, she might have had against it.

We agree also with the trial court in his allowance of Brenda's husband to testify as to the representations the deceased agent made to him. However, the fact that the husband testified that the policies were identical, could not of course establish that the agent's representations to the deceased were identical.

The wisdom of the statute has been the subject of much controversy in legal periodicals, and we are aware of them. We recognize that in the instant case there is a question whether the result we necessarily reached is the result which we should like to have reached. It is, however, the only result we could reach within the proscription of the statute and the settled interpretation thereof. The judgment of no cause of action is affirmed. Costs to the appellee.

KAVANAGH, C. J., and DETHMERS, KELLY, BLACK, SOURIS, SMITH, and ADAMS, JJ., concurred.