SEEBER *v*. CITIZENS STATE BANK OF STURGIS.

OPINION OF THE COURT.

1. WITNESSES—DEAD MAN'S STATUTE—MATTERS EQUALLY WITHIN KNOWLEDGE OF DECEASED.

The prohibition of the dead man's statute, which forbids an opposite party in litigation with the heirs, assigns, devisees, legatees, or personal representatives of a deceased person, to testify at all to matters which, if true, must have been equally within the knowledge of the deceased person, embraces more than just superficial appearances (CLS 1961, § 600.2160).

2. SAME—DEAD MAN'S STATUTE—SCOPE.

The dead man's statute renders the testimony of an opposite party within its prohibition inadmissible whether or not the person is a party of record (CLS 1961, § 600.2160).

3. SAME—OPPOSITE PARTY—CONTRACT TO MAKE WILL.

Witness in an action against the estate of a decedent to enforce a contract to make a will, made during the lifetime of the decedent, who was to be one of the beneficiaries of the agreement, *held*, to have an antagonistic interest to the estate which rendered her an opposite party within the purview of the dead man's statute, and made her testimony inadmissible, even though the witness was not a party to the action, and had

REFERENCES FOR POINTS IN HEADNOTES
[1, 2, 5]  58 Am Jur, Witnesses § 214 *et seq.*
[3, 4]  58 Am Jur, Witnesses § 281.

made no claim against the estate, and in her testimony disclaimed any present interest she might possibly have in the estate (CLS 1961, § 600.2160).

DISSENTING OPINION.

T. G. KAVANAGH, J.

4. WITNESSES—DEAD MAN'S STATUTE—OPPOSITE PARTY—ADVERSE INTEREST.

The term "opposite party" as used in the dead man's statute refers to the person asserting the particular adverse interest which is the subject of the litigation, and not other persons having adverse interests which are different and may be the subject matter of other litigation (CLS 1961, § 600.2160).

5. SAME—DEAD MAN'S STATUTE—COMPETENCY.

Either claimant could be a competent witness in establishing the other's claim, where the same contract gives rise to two different rights in two different claimants, the only testimony being rendered inadmissible by the dead man's statute being where the witness shares, or has assigned the share, in the asserted claim (CLS 1961, § 600.2160).

Appeal from St. Joseph; Andrews (Mark S.), J. Submitted Division 3 January 4, 1967, at Grand Rapids. (Docket No. 1,711.) Decided June 13, 1967. Leave to appeal granted August 22, 1967. Appeal dismissed by stipulation October 31, 1967.

Complaint by Marjory I. Seeber, Henry T. Irving, Florence E. Irving, and John L. Irving against the Citizens State Bank of Sturgis, Michigan, a Michigan banking corporation, executor of the estate of Edwin T. Beadle, and Northwestern University, an Illinois corporation, for specific performance of an oral contract by Edwin T. Beadle to leave his estate to plaintiffs, and for other equitable relief. Judgment for defendants. Plaintiffs appeal. Affirmed.

*Long, Preston & Evans,* and *Arthur G. Lyon* for plaintiffs.

*Dresser & Dresser* (*Frederic F. Brace, Jr.,* and *Sidley, Austin, Burgess & Smith,* of counsel), for defendants.

FITZGERALD, P. J.   The plaintiffs in this case were nieces and nephews of Harry E. Beadle who died in 1948.   Harry E. Beadle had one child, a son, by his first wife.   The son, Edwin Beadle, died in 1964 and it is over the provisions of his will that this action was brought.   The Citizens State Bank of Sturgis is the duly qualified executor of the will of Edwin Beadle and is the defendant in this action, along with Northwestern University, sole residuary devisee and legatee.

On two separate occasions occurring in 1946 and 1947, Harry E. Beadle purportedly talked to his son, Edwin Beadle, concerning the disposition of the latter's property upon his death.   Apparently the father was desirous to see that all the property he left to his son would pass to his nieces and nephews, his son's first cousins, on the son's death.   It is alleged that Edwin Beadle promised his father to leave all of his inherited estate to his first cousins in accordance with his father's wishes.   The only limitation on this purported agreement was that Edwin was to see that Harry's second wife, Mrs. Iva B. Taylor Beadle Morse, was adequately taken care of.   The will left by Edwin at his death was at odds with this purported agreement, leaving a large part to Northwestern University, and this suit was filed by plaintiffs to enforce the terms of the claimed agreement to leave the property to them.

The only proof of the purported agreement produced by plaintiffs was the testimony of Mrs. Morse relating to the substance of conversation between father and son.   The gist of Mrs. Morse's testimony was that Edwin had promised that he would bequeath that which he inherited from his father to the plaintiffs herein after provisions had been made for Mrs. Morse.   Defendants objected to the admission of Mrs. Morse's testimony on the grounds that it vio-

lated the terms of the so-called "dead man's statute". The trial court held that Mrs. Morse's testimony was incompetent by reason of the statute. There being no other proof of the purported agreement or any of its terms, plaintiffs' suit was dismissed. From that judgment, plaintiffs appeal.

The pertinent portion of the statute in question reads:

"When an action or proceeding is prosecuted or defended by the heirs, assigns, devisees, legatees, or personal representatives of a deceased person, the opposite party, if examined as a witness in his own behalf, shall not be admitted to testify at all to matters which, if true must have been equally within the knowledge of such deceased person." CLS 1961, § 600.2160 (Stat Ann 1962 Rev § 27A.2160[1]).

The sole question that need be decided on this appeal is whether Mrs. Morse was an opposite party testifying in her own behalf within the meaning of the statute.

Mrs. Morse was not a party to this suit. She has filed no claim against the estate of Edwin Beadle and was only called as a witness by appellants. Further, Mrs. Morse had disclaimed any present interest she might possibly have in the estate of Edwin Beadle. On the surface then, Mrs. Morse would not appear to be an opposite party testifying in her own behalf. But the statute's prohibitions embrace more than just superficial appearances. See *Mitrage* v. *Bankers Life & Casualty Company* (1964), 373 Mich 573.

Mrs. Morse paraphrased one of Harry Beadle's statements to his son, Edwin, as follows:

"Edwin, I want to be positive that, 'that first of all I (referring to Mrs. Morse) was taken care of,' and then I want the rest of what I leave to you to go to the Irving family."

Edwin purportedly agreed to carry out his father's wish.

The paraphrased testimony establishes two things, if it establishes anything at all. One, Mrs. Morse was to be taken care of first. The other, the Irvings were to receive the balance of all Edwin inherited from his father. The fact of Mrs. Morse's antagonistic interest to Edwin Beadle's estate is inescapable. Her antagonistic interest renders her an opposite party within the purview of the statute. *Caswell* v. *Smith's Estate* (1933), 263 Mich 390.

The fact that Mrs. Morse was not a party to the plaintiffs' action does not negate the fact of her antagonistic interest. The statute renders the testimony of an opposite party inadmissible whether or not the person is a party of record. *Caswell* v. *Smith's Estate, supra.*

*Berry* v. *Adams* (1899), 122 Mich 17, contains perhaps the most succinct penetration to the heart of the situation before us. In that case Rose Marsh Berry had assigned her claim to an estate to her children. In seeking to establish their case, the testimony of the mother, Mrs. Marsh, was offered and rejected in the following words:

"It is manifest that the testimony of Rose Marsh Berry is indispensable to the complainants, for without it their case is not proved. Her testimony was taken under the objection that it was incompetent, under the statute, as being in relation to matters equally within the knowledge of the deceased. *Were Rose Marsh Berry seeking to enforce the original contract in her own name, there can be no doubt that the objection to her testimony would be good.*" (Emphasis supplied.)

Plaintiffs seek to discount this decision by demonstrating that there had been assignment, barred by statute. The Court, however, obviously putting

its reliance primarily on Rose Marsh Berry's position, said, "It is *also* true that, if the complainants were assignees of her rights under that contract. the objection would be good, because the statute prohibits testimony by assignors."

Summing it up in *Berry,* the Court used words referring to Rose Marsh Berry that can be applied with equal vigor to the testimony of Iva Beadle Morse who, in effect, has removed herself as a claimant. "She was, therefore, prohibited from testifying by the statute, as she would have been had she attempted to enforce the alleged contract upon her own behalf." In the instant case, Mrs. Morse could not have testified as to her own claim, had she sought to enforce it, and she may not testify as to plaintiffs' claim, different though it may be.

There is some evidence that Mrs. Morse's interest might have been contingent on her being in need. This contingency does not negate the existence of an interest in Mrs. Morse and thus in no way aids the plaintiffs' case. A party is an opposite party within the meaning of the statute whenever his interests are antagonistic to those of the deceased party's estate and this is true whether the interest is immediate or remote. See definitions in *Hayes* v. *Skeman* (1934), 269 Mich 473, and *Salsbury* v. *Sackrider* (1938), 284 Mich 493.

Finally, we must reject plaintiffs' argument that Mrs. Morse had no interest in Edwin Beadle's estate after his death because Edwin's only duty to her was to care for her during his lifetime. Mrs. Morse's own testimony refutes this line of argument. When Edwin agreed to carry out his father's wishes, he was agreeing to make a will containing the provisions his father desired. The parties were discussing wills; not lifetime duties.

Plaintiffs also contend that certain testimony should have been received to show the father's state

of mind or the reliance of Harry Beadle on his son's promises, but this point is rendered moot by the finding that her total testimony is inadmissible as barred by the statute.

Other questions raised relative to a constructive trust have been considered and found without substance.

Harsh though the result of literal application of the statute may be, it is the only result that can be reached under that statute and its subsequent interpretations. While the wisdom of this enactment has come under sharp questioning by legal scholars, it is beyond the power of this forum to change it. A recent comment will be found in *Mitrage* v. *Bankers Life & Casualty Co., supra,* p 577, to which we can subscribe in spirit and letter.

Judgment affirmed. Costs to appellees.

QUINN, J., concurred with FITZGERALD, P. J.

T. G. KAVANAGH (*dissenting*). I believe my brothers confuse "adverse interest" with "opposite party."

Several persons could have an interest adverse to an estate. In each separate litigation the "opposite party" would be the one asserting the particular adverse interest which was the subject of the litigation. The statute would not bar testimony from any other person who happened to have a different adverse interest in the current litigation.

In the case before us Mrs. Morse conceivably had an interest adverse to the estate despite her disavowal of such, but in any event, she was not a party to this litigation asserting an interest opposite to the estate.

In *Mitrage* v. *Bankers Life & Casualty Company* (1964), 373 Mich 573, the very interest of the witness was transferred by assignment to the plaintiff who

asserted it. In *Caswell* v. *Smith's Estate* (1933), 263 Mich 390, the claim of the witness was held to have merged with that of her claimant husband. In *Berry* v. *Adams* (1899), 122 Mich 17, the witness had assigned her claim to plaintiff.

Where the same contract gives rise to two different rights in two different claimants, either claimant could be a competent witness in establishing the other's claim. It is only when the witness shares (or has assigned the share) in the asserted claim that the statute bars the testimony.

I would reverse for a new trial.