DETROIT BANK & TRUST COMPANY v DICKSON

1. Witnesses—Dead Man's Statute—Partnerships—Matters of
   Equal Knowledge—Relevant Declarations—Admissibility.

   A trial court properly declined to strike a widow's testimony
   under the dead man's statute where she was not a party
   adverse to the estate and where, even if the statute were
   applied the testimony would have been admissible either be-
   cause it was supported in some material portion by material
   evidence tending to corroborate the claims, or because, given
   the testimony both promised by the other party in their open-
   ing statement and later given, the widow's testimony was
   admissible as an example of "declarations by the individual so
   incapable of testifying" under the statute (MCLA 600.2166[1],
   [3]; MSA 27A.2166[1], [3]).

2. Partnership—Uniform Partnership Act—Surviving Partners
   —Right to Buy.

   The provisions of the Uniform Partnership Act which empower a
   surviving partner to wind-up the partnership do not give him a
   right to buy it (MCLA 449.37; MSA 20.37).

3. Trial—Findings of Fact—Partnership—Record Support—Ap-
   peal and Error.

   A trial judge's finding that a second partnership agreement,
   which did not contain a buy-sell provision included in the first,
   constituted the entire agreement between the partners and
   that no enforceable buy-sell agreement was therefore in effect
   was not clearly erroneous where the finding was supported on
   the record by competent evidence.

4. Trial—Separate Record—Denial of Record—Compelling Rea-
   sons—Appeal and Error.

   Requests for a separate record of excluded testimony should be
   granted unless there is a compelling reason to the contrary; it

References for Points in Headnotes
[1] 81 Am Jur 2d, Witnesses § 303 *et seq.*
[2] 60 Am Jur 2d, Partnership §§ 230–232.
[3] 5 Am Jur 2d, Appeal and Error § 841.
[4] 75 Am Jur 2d, Trial § 253.

was error to deny a defendant's request to offer proof on a separate record in support of his attacks on the validity of a sheriff's sale of partnership assets where there was no compelling reason to exclude the proof.

Appeal from Livingston, Halford I. Streeter, J. Submitted May 11, 1977, at Detroit. (Docket No. 27519.) Decided September 6, 1977.

Complaint by Detroit Bank & Trust Company, as executor of the estate of Stanley E. Krol, deceased, against Stanley B. Dickson to compel dissolution and winding-up of a partnership. Counterclaim by defendant to compel enforcement of a buy-sell agreement. Judgment for plaintiff. Defendant appeals. Remanded for further proceedings.

*Dykema, Gossett, Spencer, Goodnow & Trigg* (by *Joel J. Morris* and *Ted T. Amsden),* for plaintiff.

*William B. Elmer (Michael H. Feiler,* of counsel), for defendant on appeal.

Before: BASHARA, P. J., and QUINN and BEASLEY, JJ.

BEASLEY, J. Plaintiff-appellee, Detroit Bank & Trust Company, executor of the estate of Stanley E. Krol, deceased, hereinafter referred to as plaintiff estate, filed a complaint to compel dissolution and winding-up of a partnership consisting of plaintiff estate's decedent and defendant-appellant, Stanley G. Dickson. After answer and counterclaim by defendant to secure compliance with an alleged buy-sell provision of the partnership agreement, trial was held on the merits.

The trial judge, in a trial without a jury, found that no valid buy-sell agreement existed at the date of death and ordered a sheriff's auction sale

of the partnership properties. After the sheriff's sale, he ordered confirmation of sale to the plaintiff estate.

Defendant appeals as of right, asserting four issues.

First, defendant claims that permitting the widow of plaintiff's decedent to testify regarding conversations with her husband (plaintiff's decedent) was error. Defendant says that the husband's statement, that there was no buy-sell agreement in effect after the 1965 agreement was signed, was hearsay, self-serving and precluded by the so-called "dead man's" statute[1] as being equally within the knowledge of the deceased.

The pertinent portions of the "dead man's" statute as amended provide as follows:

"(1) In an action by or against a person incapable of testifying, a party's own testimony shall not be admissible as to any matter which, if true, must have been equally within the knowledge of the person incapable of testifying, unless some material portion of his testimony is supported by some other material evidence tending to corroborate his claim.

"(2) A 'person incapable of testifying' includes an individual who is incapable of testifying by reason of death or incompetency and his heirs, legal representatives, or assigns; and includes an individual, corporation, or other entity, or the successors thereof, whose agent, having material knowledge of the matter, is incapable of testifying by reason of death or incompetency. A 'party's own testimony' includes the testimony of his agents, successors, assigns, predecessors, or assignors.

"(3) In any such actions, all entries, memoranda, and declarations by the individual so incapable of testifying, relevant to the matter, as well as evidence of his acts and habits of dealing tending to disprove or show the

_____
[1] MCLA 600.2166; MSA 27A.2166.

improbability of the claims of the adverse party, may be received in evidence." MCLA 600.2166; MSA 27A.2166.

Defendant's application of this statute to the widow's testimony apparently rests on the assumption that subparagraph (1) of the statute, in its present amended form, applies equally to decedents' estates and also to parties adverse to such estates.[2] In this case, it is unnecessary to decide the merits of that assumption because, even if the statute would apply to the widow's testimony, still the testimony would not be precluded by the statute. This conclusion follows from two reasons. First, when defendant initially raised his objection under the dead man's statute, the court would normally look to subparagraph (1) of the statute. As has already been noted, subparagraph (1) historically would not preclude the widow's testimony since she was not in an antagonistic position relative to the estate. However, the trial judge did not have to immediately decide whether or not to

---

[2] The predecessor of the present statute read, in part:

"When an action or proceeding is prosecuted or defended by the heirs, assigns, devisees, legatees, or personal representatives of a deceased person, the opposite party, if examined as a witness in his own behalf, shall not be admitted to testify at all to matters which, if true must have been equally within the knowledge of such deceased person. When any action or proceeding is prosecuted or defended by any surviving partner or partners, the opposite party, if examined as a witness in his own behalf shall not be admitted to testify at all in relation to matters which, if true, must have been equally within the knowledge of the deceased partner, and not within the knowledge of any one of the surviving partners." 1961 PA 236, § 2160(1).

Prior statutes had also utilized the "opposite party" language. See, e.g., 1929 CL 14219; 1915 CL 12553. These words have long been applied to exclude only the testimony of persons in an antagonistic relation to the estate. Moore v Machen, 124 Mich 216; 82 NW 892 (1900), Caswell v Smith's Estate, 263 Mich 390; 248 NW 845 (1933). Defendant argues, in essence, that the deletion of the word "opposite" evidences a legislative intention to apply the statute to all parties, whether they be the estate or in opposition to it. This position appears tenuous in light of the wording of the present subparagraph (3) of the statute, but, as noted, we do not here decide the merits of defendant's reading of the statute.

apply subparagraph (1); at the time of the objection he had already been informed, both in defendant's opening statement and in defendant's pretrial brief, that defendant intended to introduce the testimony of the surviving partner.[3] That testimony would also relate matters equally within the knowledge of the deceased partner because it would concern the partners' intentions when they entered into the 1965 partnership agreement. The exact nature of the partners' intentions was crucial since plaintiff alleged that the 1965 agreement superseded all prior agreements and that a prior buy-sell provision was, therefore, no longer in effect. Knowing that this testimony was to be offered, the trial judge declined to rule inadmissible the widow's testimony under the quoted subparagraph (1) of the statute. Instead, the trial judge received the testimony, under a continuing objection, with the possibility that it could be stricken later if necessary. In this fashion, the trial judge assured that the admissibility question would be decided under subparagraph (1) only if the defendant's expected testimony was not given. If the defendant did offer the testimony of the

---

[3] Defendant's opening statement included the following:

"We see a number of legal issues surrounding the decision of the Court. The first is: may Mr. Dickson as a surviving partner testify as to what was intended when this 1965 document was signed, in view of the fact that the other party to this instrument is now deceased?

"The Dead Man's Act, of course, contains a provision that the Court may look into all of the surrounding circumstances and other facts to determine whether the Act shall bear [sic] the testimony of the survivor. And if the survivor's testimony is corroborated in any material respect by disinterested witnesses, and then the Dead Man's Act no longer bears [sic] the testimony.

"We are confident that we will be able to show by all of the circumstances as well as by disinterested witnesses that the 1965 agreement was an addendum and merely an addendum to the effect that the partnership was now to operate the entire shopping center.

"And that Mr. Dickson can so testify as can the attorney who drafted the agreement, who represented both parties. And that there will be no problem with the Dead Man Statute."

surviving partner, under the statute's exception for testimony corroborated in some material portion by material evidence, then the widow's testimony could be admitted under subparagraph (3) of the statute without any reference to subparagraph (1). Subparagraph (3) would apply because once the defendant, the adverse party, had offered the surviving partner's testimony under the referenced exception, then the widow's testimony concerning her husband's statements would, under any reading of the statute, be an example of the "declarations by the individual so incapable of testifying, relevant to the matter * * * ". MCLA 600.2166(3); MSA 27A.2166(3). Since the defendant did, in fact, offer the surviving partner's testimony, the widow's testimony would be admissible under subparagraph (3) of the statute, if the statute were applied.

Second, even if the widow's testimony was to be examined under subparagraph (1), still it would be admitted for the same reason that defendant was able to introduce the surviving partner's testimony. That reason is that the testimony of both was supported in some material portion by material evidence tending to corroborate their claims.

Therefore, we hold that the trial judge was correct in declining to strike the testimony under the dead man's statute because the testimony was admissible even if the statute were to be applied.

Defendant's second claim on appeal is two-fold; that there was a valid buy-sell provision in the partnership agreement and, even if there wasn't such a buy-sell agreement, the Uniform Partnership Act[4] gives a surviving partner the right to purchase the interest of the deceased partner under the court's supervision. In support of this

[4] MCLA 449.31(4); MSA 20.31(4).

claim, defendant cites an interesting law review article which supports this view.[5] However, the Uniform Partnership Act presently provides a right to wind-up, not buy, the partnership:

"Unless otherwise agreed, the partners who have not wrongfully dissolved the partnership or the legal representative of the last surviving partner, not bankrupt, has the right to wind-up the partnership affairs; provided however, that any partner, his legal representative or his assignee, upon cause shown, may obtain winding-up by the court." MCLA 449.37; MSA 20.37.

Moreover, even if these facts give rise to a right to buy after procurement of a judicially supervised winding-up of the partnership, still defendant has no cause to complain because such a winding-up would give defendant no more than he has already received, *i.e.,* a judicially supervised sale.

Nor was the trial court in error when it found that no buy-sell provision was in effect at the time of Mr. Krol's death. The record indicates that on March 31, 1958, plaintiff's decedent and defendant entered into a partnership agreement that contained so-called buy-sell provisions. Subsequently, on February 6, 1965, the partners entered into a new written partnership agreement that did not contain any buy-sell provision.

After hearing testimony regarding alleged conversations with plaintiff's decedent on the part of defendant, on the part of the attorney who drew plaintiff's decedent's will and on the part of the widow, the trial judge found that the 1965 partnership agreement "constitutes the entire agreement" between the partners. This finding is supported by the referenced documents and testimony and, therefore, is not clearly erroneous. GCR 1963,

---

[5] 62 Mich Law Rev 106 (1963).

517.1. Since the 1965 agreement contained no buy-sell provisions, the trial court's finding that no such provision was in effect was, likewise, supported by the record.

Consequently, with respect to these two issues, the trial court was not clearly in error and, to this extent, the judgment is affirmed.

The remaining two issues raised by defendant relate to the public auction sale. First, defendant claims that the notice of the auction sale referred only to three parcels of real estate, that the trial court and the parties intended that *only* the three parcels of real estate be sold at public auction, but that the bill of sale given by the sheriff included partnership cash, receivables and bank accounts. Defendant, therefore, claims the sale should have been set aside and the request for confirmation denied. Plaintiff estate vigorously denies these claims and asserts that defendant's trial counsel specifically knew that the partnership cash, receivables and bank accounts were included in the sale.

In addition, defendant claims that the trial judge erred in denying his request to offer testimony on a separate record in support of his attack on the validity of the sheriff's sale. In this connection, at the hearing on plaintiff estate's motion to confirm the sale, defendant moved to set aside the sale and requested opportunity to place upon a separate record testimony in support of his position. The trial judge denied the request for separate record without explanation. *Hileman v Indreica* [6] is authority for the proposition that, except where there is compelling reason to the contrary, requests for a separate record of excluded testimony should be granted.[7] This record

[6] *Hileman v Indreica*, 385 Mich 1, 17; 187 NW2d 411(1971).
[7] GCR 1963, 604.

indicates no such compelling reason. It was error to deny the defendant's request to offer proof on a separate record.

Consequently, this cause is remanded to the trial court to give defendant an opportunity to offer proof on a separate record, relating to defendant's motion to set aside the sale and to set aside the order confirming the sale.[8] The trial court is directed to hold such hearing within 30 days of entry of this opinion, after which such separate record shall be transmitted to this Court. This Court retains jurisdiction for the purpose of reviewing said separate record before ruling on the third and fourth issues.

---

[8] Implicit in such remand is similar opportunity for an answering separate record by appellee if deemed appropriate.